# THE STATE v. PYSCHER, Appellant.

### Division Two, December 23, 1903.

1. **Information:** THREE AMENDMENTS. An information in a felony case may be amended, and the number of amended informations that may be filed is left to the sound discretion of the court.

2. **Statement to Jury:** NOT PRESERVED IN MOTION. Whether or not it was error to permit the prosecuting attorney in his opening statement to the jury to refer to certain statements made by the defendant in his affidavit for a continuance in a civil case, will not be considered on appeal, unless the alleged error was called to the attention of the trial court in the motion for a new trial.

3. **Evidence:** FORGERY: SUBSEQUENT DECLARATIONS MADE BY THIRD PARTY. Declarations made by a daughter to certain witnesses, in a prosecution of defendant for forging her deceased mother's name to a deed, to the effect that her mother had made defendant a deed in her lifetime, are not admissible on behalf of defendant. Such declarations are hearsay. They are not declarations against interest, for such prosecution is a criminal case and not a civil suit. Not having been made at the time it is claimed the deed was executed, but long thereafter, and after the mother's death and just prior to her own death, they are not part of the *res gestae*.

4. ———: ———: DECLARATIONS THAT MONEY WAS DUE DEFENDANT. Declarations of the deceased person whose name was signed to the deed which defendant is charged with having forged, that she owed him money, are not admissible on behalf of defendant. The fact that she owed him money would not justify the inference that she executed a deed to pay it.

5. **Instruction:** BEYOND REASONABLE DOUBT. The law does not require the application of the phrase "beyond a reasonable doubt" to each item of evidence introduced in the cause; it is sufficient to give a general instruction on that subject, applicable to the testimony as a whole.

6. ———: FORGERY: POSSESSION OF FORGED INSTRUMENT. Where the jury are first told in plain terms that they must find that the deed was forged before they can convict defendant, it is not error to further instruct them that the possession of the forged deed by him and the claiming of the land therein described, unless satisfactorily explained in a manner consistent with his innocence, are conclusive presumptions of his guilt.

7. ———: ———: INTENT. The act of forgery carries with it its intent. It is not necessary to prove what defendant's intent was in forging a deed.

8. ———: ———: OF ACKNOWLEDGMENT. Testimony that the acknowledgment to a deed was a forgery may be introduced in evidence as a fact bearing on the establishment of the main fact that the deed itself was forged.

Appeal from Saline Criminal Court.—*Hon. John A. Rich*, Judge.

AFFIRMED.

*W. C. Todd, Com. P. Storts, W. G. Lynch* and *S. B. Burks* for appellant.

(1) It was error to allow the prosecuting attorney to file three amended informations. It is an abuse of his power. All amended informations being filed during the term of court and on day set for trial, one while jury was being examined on voir dire caused a continuance. Defendant being unable to give bail, it worked great hardship on him. It was repugnant to his rights. R. S. 1899, sec. 2641; Const., art. 2, sec. 22; Const. U. S., art. 6. (2) The court erred in permitting the prosecuting attorney, over the objection of defendant, to state to the jury the statements of defendant in his affidavit for a continuance in the case of G. M. Francisco v. this defendant. The court sustained the objection to the reading of the same, but the poison had been injected. R. S. 1899, sec. 4657. (3) The court erred in not allowing the witnesses, McGuire, Samuel Pyscher, Christina Ellerbrecht, Emma Pyscher and others to testify to the jury the acts and statements of Anna Kroecker in regard to the deed and land in question. (a) Had it been that Anna Kroecker had no interest in the land, her actions being so closely connected with the transactions and all of her mother's business, her actions and statements would be part of the *res ges-*

*tae;* such declarations are not hearsay, and are therefore admissible. State v. Gabriel, 88 Mo. 631. (b) It is admitted that statements of Katherine Kroecker in regard to the deed, are part of the *res gestae,* and competent testimony; Anna Kroecker being the only child and heir of Katherine Kroecker, she had a fee simple title to all the lands of which her mother died seized, and any statements made by her after her mother's death is on a par, is the same evidence as her mother's statements. Landree v. Warren, 53 Mo. App. 442; In re Estate of Lloyd, 44 Mo. App. 670; McPike v. McPike, 111 Mo. 232; Hall v. Bank, 145 Mo. 418; Becraft v. Lewis, 41 Mo. App. 552. Statements of the party in interest are not hearsay. Wharton, Crim. Ev., secs. 248, 249, 250. (c) Anna Kroecker's statements do not fall under the doctrine of hearsay evidence. It is a part of the *res gestae.* State v. Gabriel, supra. (d) Defendant did not offer to prove that Anna Kroecker heard her mother say she made the deed, or heard that was the deed she made defendant, but offered to prove a positive and personal knowledge, viz., "That Anna told him that was the deed which her mother had given Simon to the land." (4) Witness should have been allowed to state that Mrs. Kroecker "said she owed Simon money." It was germane to the issue. It was the consideration for the deed. It was the theory of the defense. The court, over the objection of defendant, let the State prove she did not owe defendant. The court was inconsistent. Both rulings could not be right. (5) The court erred in sustaining objection by the State to questions asked Dr. Sullivan. The questions tended to show the great interest he had, and took, in the prosecution, and is the theory given as the law in the eleventh instruction given by the State. State v. Painter, 67 Mo. 84; *"Falsus in uno, falsus in omnibus."* (6) The second instruction is wrong in not telling the jury they should find and believe from the evidence beyond a reasonable doubt, etc. (7) The court erred in giving the fourth instruction, because it

singles out certain parts of the evidence, viz., that if they believe the deed was forged, and that the defendant had it in his possession, this "constitutes evidence that he committed the forgery." This is commenting on the evidence. It is invading the province of the jury. State v. Jackson, 99 Mo. 62; State v. Jackson, 95 Mo. 658. (8) The fifth instruction is manifestly wrong. It tells the jury that unless the defendant's claim to the deed is "satisfactorily explained to the jury," "in a manner consistent with the innocence of the defendant," his guilt "becomes conclusive." These positive statements throw a burden on the defendant that has never been sanctioned by this court. State v. Good, 132 Mo. 125. While it is not necessary to apply reasonable doubt seriatim to each instruction, yet, when an instruction like the fourth and fifth singles out certain facts, and states they are sufficient to convict, unless satisfactorily explained, the jury should be instructed to give the defendant the benefit of any reasonable doubt. The instruction in State v. Good, supra, is the law, and anything less is error.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The fact that the prosecuting attorney filed three amended informations is alleged as error. No showing is made to the effect that defendant was thereby deprived of his rights under article 6 of the Constitution of the United States or under article 2, section 22 of the Constitution of Missouri. The provisions of section 2641, Revised Statutes 1899, were not violated. The conditions there required in order to warrant defendant's release did not exist. (2) Complaint is made that the trial court erred in not allowing witnesses McGuire, Samuel Pyscher, Christine Ellerbrecht, Emma Pyscher and others, to testify as to the acts and statements of Anna Kroecker in regard to the deed and land

in question. The fact that Anna Kroecker, deceased, had or held no interest in the real estate in question is of no consequence, so far as the admissibility of her statements is concerned. Such declarations are not and can not be natural and inartificial concomitants of any act done by defendant, as was held essential in the case of State v. Gabriel, 88 Mo. 631. The declarations so much desired by defendant come as from the lips of a third person not on oath. They come clearly under the rule of excluding hearsay testimony and, therefore, were properly kept from the jury. The testimony of a witness must be confined to matters within his own knowledge and not such as he may have gathered from others or from persons who were closely related to or associated with the parties to the principal fact. 1 Greenleaf on Evidence, sec. 98. (3) Defendant assails the correctness of instruction number 2, given on part of State, for the reason that it did not require the jury to find and believe from the evidence beyond a reasonable doubt. This instruction did require the jury to "find and believe from the evidence," which, when taken in connection with all other instructions, was sufficient. State v. Baker, 136 Mo. 74. By instructions 14, given for the State, and number 2 for the defendant, the jury was properly instructed on the question of reasonable doubt. None other was necessary. State v. Fannon, 158 Mo. 156. (4) Instruction number 4, given on the part of the State, conforms in every essential to the one approved in State v. Good, 132 Mo. 125, the law of which applies to the case at bar. Upon proof of the fact that defendant had in his possession a forged and falsely made instrument, the same presumption arises as in the case of an accused being found in the recent possession of stolen property. State v. Patterson, 116 Mo. 504; State v. Baker, 64 Mo. 282; State v. Owens, 79 Mo. 619; State v. Kelley, 73 Mo. 609; State v. Tutt, 63 Mo. 598; State v. Haws, 98 Mo. 188.

FOX, J.—The original information in this case was filed by the prosecuting attorney of Saline county on the 21st day of September, 1901. Various amended informations and motions to quash the same were filed until the 11th day of March, 1902, when the third amended information was filed by the prosecuting attorney. This last amended information contains three counts. It is unnecessary to notice any other count than that upon which the defendant was convicted, to-wit, the second count in the third amended information, which charges that the defendant unlawfully and feloniously caused to be forged and falsely made a certain deed purporting to be the act of one Katherine Kroecker, whereby the title to certain real estate therein specified was purported to be conveyed to the defendant. Upon this count, defendant was convicted and his punishment assessed at ten years in the penitentiary.

The body of the crime is laid in Saline county, the date of its commission being October 26, 1899.

Defendant filed a motion to quash the third amended information, and upon consideration it was overruled by the court. After conviction, motions for a new trial and in arrest of judgment were presented and were overruled, whereupon an appeal was taken to this court.

The defendant, Simon Pyscher, worked for and lived at the home of a woman by the name of Katherine Kroecker for several years prior to December, 1899. Mrs. Kroecker owned a farm adjoining and comprising a part of what is known as the old part of New Frankfort, Missouri, situated in Saline county. The farm consisted of something more than sixty-eight acres. Mrs. Kroecker died in December, 1899, leaving a daughter, Anna Kroecker, as her only heir. Defendant administered upon the estate, Anna Kroecker being surety on his bond as administrator. Defendant filed an inventory of the real estate belonging to the deceased,

Katherine Kroecker, and this inventory contained a list of the property claimed by defendant under the alleged forged deed.   Defendant also had the real estate appraised for the purpose of obtaining an order of sale to pay the debts of the estate and no claim seems to have been made to the property by him until after the death of Anna Kroecker in February, 1901.   After the death of Anna Kroecker, the probate court made an order requiring the defendant to give a new bond as administrator of the estate of Katherine Kroecker, deceased.   Defendant failed to comply with the order requiring the new bond and the court made an order removing him and ordering the public administrator of Saline county, George M. Francisco, to take charge of the estate.   Francisco, upon taking charge of the estate, went to defendant and asked him if he wanted to remain upon the place another year, evidencing a willingness to rent it to him.   At the same time Dr. T. J. Sullivan went to see defendant to ascertain whether or not he wanted to remain on the place another year, stating to him that if he did not he (Sullivan), intended to rent it if he could.   The defendant in both instances said that he did not intend to remain there, but expected to remove to Oklahoma.   No claim was made by him to any part of the land during either of the foregoing conversations.

Defendant talked freely to Francisco about the land that belonged to the estate and its value, his estimate being that its rental value was about one hundred and fifty dollars per annum.   Taking defendant at his word, the public administrator rented the land to Dr. Sullivan, but when Sullivan undertook to obtain possession, he was met by defendant with the proposition that the land did not belong to the estate, but that he (Simon Pyscher) held it by virtue of a deed, executed to him by Mrs. Kroecker.   It appears from the record that two suits were instituted against the defendant, one by Dr. Sul-

livan for unlawful detainer, and one in ejectment brought by the public administrator.

It seems that the defendant made no claim to the property until after the death of Anna Kroecker in February, 1901, his claim being that Mrs. Katherine Kroecker owed him one hundred dollars and finding that she would not be able to repay him, executed the deed with the understanding that if the money was not paid the deed should become effective.

The deed claimed by the State to be forged was seen by Dr. Sullivan at the house formerly occupied by Katherine Kroecker and was described by him as being an old blank form, which contained nothing but the name and signature of Katherine Kroecker, with no description of land, grantor or grantee. It was shown by witnesses for the State that the body of the deed, including the acknowledgment, was written at a very recent time, while the signature, from the general appearance of the paper and the writing, had evidently been written for some time on account of the ink having turned yellow.

For the defendant, two witnesses, E. N. Snider and Clarence Pyscher, a brother of the defendant, testified that on the day before Katherine Kroecker died, they were at her home, and that she called to the defendant to bring her a certain deed, which he did, and she then announced in their presence that as defendant had been good to her, she intended to deed him a part of her land, and handed defendant the deed and told him to put it away. These witnesses testified that the deed introduced in evidence and alleged by the State to be forged is the same deed that Mrs. Kroecker had and gave to the defendant while they were at her home.

A. W. Thompson, Mrs. Caroline Zend, Joseph Zend, Joseph Genser, Mrs. Ellerbrecht, Emma Pyscher and Samuel Pyscher all give testimony tending to show that the deed was not a forgery.

The acknowledgment to the deed was in the name

of a man named F. H. L. Miller, who was a notary public and lived in New Frankfort from 1866 to 1874, but his commission expired, as shown by the record in the county clerk's office, in 1874, and very little had been heard of him since that date. It appears that Miller had lived in the home of Mrs. Kroecker and while there had left his notarial seal in her house, several persons having seen it a few days prior to the death of Mrs. Kroecker.

In addition to the testimony above given, two or three witnesses were introduced as experts to testify as to the handwriting in the deed in question and purporting to be forged. Those for the State testified that the body of the deed and the signature of the witness Snider, were by the same hand, while other witnesses for the defense stated that they were written by different persons.

In rebuttal of the testimony offered by defendant, the State introduced a number of witnesses, contradicting and impeaching the witnesses testifying in behalf of defendant.

At the close of the evidence, the court instructed the jury upon the law, as applicable to the facts developed from the testimony of the witnesses. The jury returned a verdict of guilty as charged in the second count of the information, and assessed defendant's punishment at imprisonment in the penitentiary for ten years. Motions for new trial and in arrest of judgment were duly filed, and by the court overruled, and defendant prosecutes this appeal, and the record is now before us for review.

The instructions complained of will be given attention and discussed in connection with other contentions of appellant, in the course of the opinion.

The errors assigned in this cause are briefly stated as follows:

First.   That it was error for the court to permit the prosecuting attorney to file three amended informations.

Second.   It was error to allow the prosecuting at-

torney, in his opening statement to the jury, to refer to the statements of defendant, made in an application for a continuance in a civil suit between Francisco and this defendant.

Third. That the court erroneously excluded the testimony of certain witnesses as to statements made to them by Anna Kroecker.

Fourth. That the statements of Katherine Kroecker, in which she "said to others that she owed Simon money," were improperly excluded.

Fifth. That the court committed error in refusing to permit counsel for appellant to propound certain questions to Dr. Sullivan, in respect to the interest manifested by him in the prosecution.

Sixth. It is complained that the court improperly declared the law upon the facts as disclosed in this case.

We will dispose of the numerous contentions in the order in which they are named, as above stated.

The first assignment of error asserts that the court erred in permitting the prosecuting attorney to file three amended informations. Upon this proposition, we will say, that it is undisputed that the State's officer has the right to prosecute upon information duly filed, and that informations are amendable. This proposition is made clear in State v. Vinso, 171 Mo. 576. In that case, the court unqualifiedly approved the rule as announced in Rex v. Wilkes, 4 Burr. 2527. GANTT, J., said in the Vinso case:

"In Rex v. Wilkes, 4 Burr. 2527, all the precedents as to the amendment of informations were brought under review by Lord MANSFIELD, and the conclusion reached that at common law an information was amendable. In the course of his opinion he asks, 'And why should it not be amended? If it had not been amended, the Attorney-General would have dropped this information, if he thought there was a slip in it, and have brought another. And this would have been more inconvenient to the defendant, and have harassed him

more; he would have no benefit, and more vexation. This amendment avoids delay, and saves expenses. . . . There is a great difference between amending indictments and amending informations. Indictments are found upon the oaths of a jury; and ought only to be amended by themselves; but informations are as declarations in the king's suit. An officer of the crown has the right of framing them originally; and may, with leave, amend in like manner as any plaintiff may do.' Now, it is obvious from the whole context of his opinion that Lord MANSFIELD recognized two methods of procedure by the crown officer. He could elect to file an entirely new information, or he could ask leave of the court to amend, by interlineation or erasure, the information already filed, and of course in the latter case, especially after issue joined, notice should be given defendant of the amendment. In this case the prosecuting attorney had elected to file an entirely new information, and we have no doubt whatever of his right so to do, or of the propriety of the decision overruling the motion to quash, based on the ground that it was not allowable to amend an information. In State v. Kyle, 166 Mo. 287, we held that 'information' as used in our Constitution, means the common-law information, and in the absence of statutory provisions to the contrary, the common-law practice prevails, and we have seen amendments proper were allowed at common law as a matter of course at any time before trial. [State v. White, 64 Vt. 372.]''

It is made apparent from that case that at common law even informations were amendable, and our Legislature, to the end that no doubt might be entertained as to the right of the representative of the State to file amended informations, by express provision authorizes and sanctions such practice, and lodged the enforcement of such right in the sound discretion of the court. [Sec. 2481, R. S. 1899.]

State v. Pyscher.

This settles the question as to the right to file amended informations, and the number of amended informations which may be filed must necessarily be left to the sound discretion of the court. While this discretion should be judiciously exercised, yet the appellate court should not interfere with the action of the trial court in the exercise of this discretion, unless it clearly appears that the defendant has been deprived of some constitutional right guaranteed to him, or of some other substantial privilege or right which would operate prejudicially to him, in the trial of the cause.

Counsel for appellant invite our attention to section 2641, Revised Statutes 1899, as supporting the first contention urged. An examination of that section fails to disclose any application to the filing of amended informations. That provision treats of the rights of the defendant, if he is not brought to trial before the end of the second term after the indictment is returned. Its purpose is to carry out the provision of the Constitution, which guarantees a fair and speedy trial. The first information was filed in this case on the 21st of September, 1901; on January 6, 1902, a little over ninety days from the filing of the original information, the defendant was put upon his trial, which resulted in a mistrial, the jury was discharged and cause continued to the March term, 1902, at which term the third amended information was filed, and defendant was tried and convicted. It is not pretended that the delay in this case was of such a character as to bring it within the terms of section 2641, supra.

The next error assigned, for which the reversal of the judgment is asked, is that the prosecuting attorney was allowed to make improper statements to the jury, in respect to certain statements of the defendant, contained in an affidavit for continuance in a civil case. This alleged error was not called to the attention of the trial court in the motion for new trial. The statements

as made are not properly preserved, hence this error complained of is not before us for review.

It is next insisted that the court committed error in excluding the testimony offered by defendant as to statements made to the witness Mrs. Ellenbrecht. The offer as made by counsel for defendant is as follows: "We offer to prove by the witness in a conversation she had with Anna Kroecker, after the death of Katherine Kroecker, that Anna told her that her mother had given Simon a deed to the land, and showed her the deed and told witness that Simon had been the best friend they had on earth, had been faithful in tending to their wants and looking after their affairs, and she was glad her mother had given Simon a deed to it and she hoped that when she died Simon would get everything."

Also the following offer was made to prove by Emma Pyscher certain facts: "We offer to prove by the witness that Anna Kroecker told the witness it was a deed from her mother to Simon for part of the land that her mother had given to Simon because Simon had always been good to her and to her mother and waited on them, and she hoped when she died that they would give all of that to him, that they had no relatives to leave the property to when she was gone, that no one had been as good as Simon to them."

Defendant's counsel made the following additional offer, by witnesses McGuire and Samuel Pyscher: "We offer to prove by the witness on the stand that Anna Kroecker told him that her mother had given Simon a deed to this land, that Simon had been so good to them and the best friend they had, and that a certain part of the land belonged to Simon, and she hoped at her death he would get the rest, that he had been the best friend that they had."

The offer to make the proof by the witnesses mentioned, as above stated, is an effort to introduce as evidence of a fact the declaration of Anna Kroecker, made to the witness. It must be kept in mind that this is

not a civil suit between the defendant and Anna Kroecker, in which the title to this land is involved. She is not a party to this proceeding, and we think it is clear that her statements, made to these outside parties, do not fall within the rule that declarations against interest are admissible. This is a criminal prosecution for forgery of a deed, and the vital fact at issue is the execution and delivery of the deed. The fact sought to be proven is that the deed charged to have been forged was a valid instrument and was executed by Katherine Kroecker to the defendant for the purpose of conveying to him the land therein described. Does this fall within the exception to the general rule that hearsay evidence is inadmissible? We think not.

The witnesses simply wanted to detail what Anna Kroecker said to them about the deed, that she said it was a deed from her mother to defendant. It is not pretended that these declarations were made at the time it is contended that her mother executed and delivered the conveyance. Everything that occurred at that time, conversations between the mother and defendant, conversations or declarations by third parties present at the time might well be said to be a part of and explanatory of the transaction. That is not this evidence; these hearsay statements are separate and independent of any principal subject or transaction so as to make it a part of the *res gestae*.

The testimony does not fall within the rule announced in State v. Gabriel, 88 Mo. 631. In that case the statements admitted constituted "a natural and inseparable concomitant" of the principal fact in controversy. In other words, the statements formed a part of the act, were explanatory of the performance of it; but in this case the hearsay statements simply undertake to prove the principal fact itself, the validity of the deed charged to have been forged.

The fact that Anna Kroecker was the heir of her mother and interested in the real estate, does not make

her statements to third parties competent or any the less subject to be termed hearsay evidence.

There was no error in the action of the court in excluding this hearsay testimony.

. Complaint is made that the court erroneously excluded statements of Mrs. Kroecker that she had some money borrowed from defendant. There was no error in this action of the court; the vital question involved in the case is the forgery of a deed. The mere fact that she had borrowed money from defendant would not justify the inference that she executed a deed to land to pay it. If the deed was in fact executed by her, even though it was without any consideration, it would not be forgery. It was no part of the defense and it was not necessary to show, that the deed was executed for a valuable consideration. On the other hand, the State introduced a witness who testified to the following conversation with defendant:

"Q. I will ask you to state to the jury whether or not Simon Pyscher ever made any statement to you with reference to Mrs. Kroecker being indebted to him, if so when? A. He come to my house to get a spring wagon to get a coffin for Anna Kroecker; he said, 'I got myself in a hell of a fix; I loaned that woman a hundred dollars and have not got a scratch of a pen to show for it.' That is all he said about the money question."

It is insisted that if this testimony was competent, then the declarations of Mrs. Kroecker as to having money borrowed from defendant were equally competent. It will be observed that the testimony of the State on that subject does not undertake to do what counsel for defendant assert in their brief was done. "That the court over the objections of defendant, let the State prove that she did not owe defendant any money;" it was just the reverse. The conversation introduced shows that the defendant did loan Mrs. Kroecker one hundred dollars. This testimony, doubtless, was not admissible

for the purpose of showing or not showing any indebtedness; but for the sole purpose of proving the admission of the defendant, that he did not have either a deed or a mortgage covering the land contained in the deed charged to have been forged.

It is next insisted that the court committed error in not permitting a cross-examination of Dr. Sullivan as to his interest in the prosecution. The record discloses that this witness had testified fully in chief for the State, and that counsel for appellant fully and most searchingly cross-examined him as to the part he was taking in the prosecution. After the defendant had rested his case, Dr. Sullivan was called in rebuttal, and it was then that appellant sought to re-cross-examine him upon a subject which had been fully covered before. We do not think that there was any error in excluding this cross-examination. Courts in the trial of causes should grant full latitude in ascertaining the facts; but when a subject has been exhausted, there must be a limit, and trials should not be retarded by repetitions in examinations that can shed no new light upon the controversy. Appellant, as the record fully discloses, had already shown that Dr. Sullivan was taking an active interest in the prosecution, and to simply have this repeated, while he was on the stand in rebuttal, could not add any force to what had previously been shown.

This brings us to the last contention in the case, that is, that the court erroneously declared the law to the jury.

The second instruction is complained of; it is as follows:

"2. If the jury find and believe from the evidence that the defendant, at the county of Saline in the State of Missouri, at any time within three years before the filing of the information in this case, to-wit, November 27, 1901, caused or procured to be forged or falsely made the deed described in the information and read in evidence, or any part thereof (not including the ac-

knowledgment of the same), purporting to be the act of one Katherine Kroecker, who was not then living, but had formerly lived and died in Saline county, Missouri, the name of said Katherine Kroecker being affixed to said deed by which an interest in the lands described in said deed and in the information, purporting to be transferred or conveyed to one Simon Pyscher, and that the same was done feloniously, that is, wickedly and wrongfully, against the admonition of the law, and with intent on the part of the defendant to cheat and defraud, then you will find the defendant guilty under the second count of the information, and so finding will so state in your verdict, and assess his punishment at imprisonment in the penitentiary for a term of not less than ten years.''

There is no merit in the complaint against this instruction. It is insisted that it is erroneous because it fails to tell the jury that they must find the facts as enumerated in the declaration, beyond a reasonable doubt. There is no necessity, and the law of this State does not require, the application of the term, ''beyond a reasonable doubt,'' to each item of evidence introduced in the cause; it is sufficient to give a general instruction on that subject, applicable to the testimony as a whole. [State v. Good, 132 Mo. l. c. 126.]

It is earnestly insisted that instructions No. 4 and 5 are erroneous. They are as follows:

''4. The court instructs the jury that if you find and believe from the evidence that the deed read in evidence and described in the information, or any part thereof (not including the acknowledgment of the same) was falsely made and forged, with intent to cheat and defraud, as defined in other instructions, and that the defendant had possession of the same in Saline county, Missouri, and that he made claim to the land described therein, or any part thereof, by virtue of and under said deed, then these facts constitute evidence that he committed the forgery of the same or caused the same to

be forged, and that he committed said forgery in Saline county and State of Missouri, and unless he explains or accounts for his possession thereof, in a manner consistent with his innocence, then these facts are sufficient to warrant the jury in finding him guilty of forgery as charged in the information.

"5. The court instructs the jury that if you find and believe from the evidence that the deed read in evidence and described in the information, or any part thereof (not including the acknowledgment of the same), was falsely made and forged, with intent to cheat and defraud, as defined in other instructions, and the defendant had possession of the same in Saline county, Missouri, and that he had made claim to the land described therein, or any part thereof, by virtue of and under said deed in said county of Saline, then such facts raise the presumption that he forged or caused the same to be forged in Saline county, State of Missouri, and that unless such possession by the defendant of said deed and his claim thereunder are satisfactorily explained to the jury by the evidence in the case in a manner consistent with the innocence of the defendant, then such presumption of guilt becomes conclusive."

These instructions correctly declare the law as applicable to the facts of this case. It must be kept in mind that this defendant is charged with forging a deed to certain real estate, from Mrs. Kroecker to himself. It certainly will not be disputed that if the defendant had the possession of the deed, he being the grantee in it, it raises a very strong legal presumption that he knew something about its execution.

The court in the instructions complained of, first in plain and unambiguous terms, required the jury to find that the deed was forged with the intent to defraud; and then tells the jury that if the defendant was in possession of this deed claiming the land described in it, such possession raises the presumption that he forged the deed, and unless such possession is satisfactorily ex-

plained, in a manner consistent with his innocence, such presumption becomes conclusive, and will authorize his conviction.

It must be conceded that if the deed in controversy was forged, and the jury were required to find that fact before indulging any presumptions, we can conceive of no state of facts which would raise a stronger presumption of guilt than the fact of possession of the forged instrument, by the defendant, to whom the deed purports to be executed, and coupled with this possession, claiming the land purporting to be conveyed.   The possession of this deed by the defendant, and claiming the land described in it, if the jury first determine that the deed was forged, was sufficient to authorize a conviction.   [State v. Hawes, 98 Mo. 188.]

The instructions now being discussed, while not strictly in accord with the approved precedents, are substantially correct.   The court in the instructions fairly and fully submitted the question as to whether or not the deed had been forged; this being done, we think it is a clear legal proposition, that if defendant had possession of the deed and was claiming under it, it constituted strong evidence of guilt, and unless explained upon some theory consistent with his innocence, authorized his conviction.

It will also be noted  that the possession of this deed and defendant's claim under it, was not denied. It was his defense that the deed was not forged, but was a valid instrument, properly executed and delivered to the defendant by Mrs. Kroecker.  This issue was fairly submitted to the jury and they found adversely to the defendant.

It is urged that instructions numbered 4 and 5, being discussed, singled out certain facts, and were a comment on the evidence.   An examination of them will demonstrate that they are not open to that objection. The distinction must be kept in view, between singling out a particular fact and a comment on the evidence

which establishes that fact.   In the trial of a cause, the State or defendant may offer testimony upon any particular fact, and it is not a comment upon the testimony to specially refer to that fact; but it would be otherwise if the court should undertake to refer specially to items of evidence, as to its weight, etc., in support of the proof of the fact itself.

While it may be said that in State v. Good, supra, the learned judge announcing the opinion in that case said it was proper to add to that clause of the instruction, which told the jury that the burden was upon the defendant to rebut the presumption arising from possession of stolen goods, "but not beyond a reasonable doubt," still we are of the opinion that the failure to add those words does not constitute error.   The very terms of one of the instructions indicates that the defendant was not bound to rebut such presumption beyond a reasonable doubt, for the instruction only required that the possession be satisfactorily explained; while this instruction does not, in express terms, it does in effect tell the jury that it is not necessary to rebut this presumption beyond a reasonable doubt.

To say to the jury that the possession must be satisfactorily explained, falls far short of saying that it must be explained beyond a reasonable doubt.   The law required of the defendant, if the deed was forged and found in his possession, to *satisfactorily explain* to the jury such possession, upon some theory consistent with his innocence, and the court so told the jury.   When the court, in substance, said to the jury that a satisfactory explanation was all that was necessary, to the reasonably intelligent juror it conveys the idea that it need not be "beyond reasonable doubt."

Instructions in a cause should be construed as a whole, and we find that the court fully covered the question of reasonable doubt as applicable to all the testimony, by the following full and fair instructions given at the request of the defendant:

"The court instructs the jury that the law clothes the defendant with the presumption of innocence which attends and protects him until it is overcome by evidence which proves his guilt beyond a reasonable doubt, which means that the evidence of his guilt, as charged, must be clear, positive and abiding, and fully satisfying the minds and consciences of the jury. It is not sufficient in a criminal case to justify a verdict of guilty that there may be strong suspicions or even strong probabilities of guilt, but the law requires proof by legal and credible evidence of such nature, that when it is all considered, it produces a clear, undoubting and entirely satisfactory conviction of defendant's guilt; and the burden of establishing the guilt of the defendant as above referred to is upon the prosecution.

"The jury are instructed that the prosecution seeks a conviction in this case upon circumstantial evidence alone. The court, therefore, instructs you that you cannot convict the defendant unless the State has proven his guilt from the evidence beyond a reasonable doubt, by facts and circumstances, all of which are consistent with each other, and with his guilt, and absolutely inconsistent with any reasonable theory of his innocence."

These two last-mentioned instructions were all that was necessary upon the subject of reasonable doubt. They are applicable to all the testimony in the cause and it is the well-settled rule that it is not necessary, in declaring the law upon the facts in a criminal case, to specially declare that each fact must be proved beyond a reasonable doubt.

Instruction No. 8, which appellant insists is erroneous, is as follows:

"The court instructs the jury that although they can not find the defendant guilty of the charge in the information upon proof that the acknowledgment to said deed was forged and fraudulently made, yet the jury are further instructed that if they believe from the evidence that the acknowledgment to said deed and the

name of the notary before whom the same purports to
have been made was forged and that the body of the
deed containing the names of the grantor and grantee
and the description of the land conveyed in said deed
was written by the same person who wrote said acknowl-
edgment, then in determining whether or not the deed
was a forgery, you have a right to consider the fact
that the acknowledgment to said deed and the name of
the notary before whom the same purports to have been
taken, were forgeries, along with the other facts and cir-
cumstances in evidence.''

It is insisted that this instruction is erroneous for
the reason that it does not restrict the purpose of the
forgery of the acknowledgment to the question of intent
on the part of the defendant. It is also urged that the
instruction assumes the forgery of the acknowledgment.
This contention is a misconception of the purposes of
the acknowledgment. The testimony as to the forged
acknowledgment and the introduction of the acknowledg-
ment, was not for the purpose of showing intent on the
part of defendant. If defendant, in fact, forged or
caused to be forged, the deed, it required no evidence of
intent—the act itself carried with it the intent; but the
evident purpose of showing the forgery of the acknowl-
edgment, it being on the same paper and so closely re-
lated to the deed, was, that this fact might be considered
in determining whether the deed had been, in fact,
forged. The forgery of the deed was a fact that had
to be proved in the case, and the testimony in respect
to the acknowledgment was introduced, not for the pur-
pose of showing intent on the part of defendant, but that
it might be considered in the establishment of the im-
portant fact, that the deed had been forged.

An analysis of the instruction makes it apparent
that this was the purpose, and also shows clearly that
the fact that the acknowledgment was forged was not

assumed; but the jury are expressly required, before considering it, to find that it was forged.

While the defendant was not charged with the forgery of the acknowledgment of the deed, and the instructions all strictly guard his rights in that respect, yet the acknowledgment being so closely connected with the deed, its forgery may shed light, in very important particulars, upon the investigation of the forgery of the deed itself. There was no error in this instruction, and the cases relied upon by counsel for appellant, State v. Myers, 82 Mo. 558; State v. Bayne, 88 Mo. 611, are not applicable to this instruction.

This brings us to the last contention in this case. That is, that the testimony is insufficient to support the verdict and the court erroneously refused to give the peremptory instructions to find the defendant not guilty, as requested by counsel for appellant.

While it may be truthfully asserted that the testimony in this cause is conflicting, yet this court can not undertake to settle this conflict. Where there is no testimony to support a verdict, it is the duty of the appellate court to unhesitantly say so; but, on the other hand, where there is substantial testimony supporting the verdict of the jury, it is equally our duty not to disturb it.

There was ample testimony in this case to warrant a conviction. The circumstances detailed were convincing, and yet it may be said, if the testimony of the defendant and other witnesses are to be credited, the defendant is not guilty and should have been acquitted.

All the testimony was submitted to the jury; they were the sole and exclusive judges of the credibility of the witnesses, and of the weight to be attached to their testimony. They had the witnesses before them, and doubtless the usual and ordinary tests of their credibility were applied. The instructions of the court covered every phase of the case, were full, fair, and exceedingly favorable to defendant. Hence, we have

reached the conclusion that the verdict of the jury should not be disturbed, and the judgment of the trial court will be affirmed.

All concur.