**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Sam GUNTER, Defendant-Appellant.**

**No. 14537.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 3, 1986.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Kathleen Murphy Markie, Columbia, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Sam Gunter, was jury-convicted of the class B felony of rape, § 566.030.3, .4,[1] and thereafter sentenced to eight years' imprisonment in accordance with the jury's recommendation.

On appeal, Gunter questions the admission of certain evidence over his objection, and claims instructional error. We affirm.

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

The information filed charged that on or about May 18, 1984, in McDonald County, Missouri, Gunter had sexual intercourse with W.B., who was then less than 14 years of age, and to whom he was not married. This language parallels that used in the statute in question, and the charge is commonly referred to as statutory rape.

The sufficiency of the evidence to sustain the verdict is not questioned on appeal. It suffices to say that there was sufficient evidence presented in the state's case in chief from which the jury could find, beyond a reasonable doubt, that on the night of May 18, 1984, Gunter had sexual intercourse with his 12 year old niece to whom he was not married. The sordid details of the depravity of the encounter need not be repeated here.

Gunter first alleges that the trial court erred in allowing into evidence, as a part of the state's case in chief, a tape of Dottie Gunter's preliminary hearing testimony. This testimony was that about May 18, 1984, she was not married to Gunter, but was living with him in a "trailer house" belonging to Gunter's father. Dottie said Gunter told her to go in to the room where W.B. and a girl friend were sleeping and tell W.B. that Gunter wanted to have sex with her. Dottie said she did talk to the child, but also told her not to come in the bedroom where Gunter was. Dottie also said that she saw Gunter have sexual intercourse with W.B., and that this occurred "about a day" after Gunter asked her to ask the child to have sexual intercourse with him.

Eight days before the circuit court trial, Dottie remarried Gunter "because I love him." Gunter and Dottie had both been advised that if they remarried the state could not use her as a witness. After the jury was sworn, and immediately before the state began to present its case in chief, Gunter's attorney stated that his client "has asked for the spousal privilege to be invoked to prohibit the testimony of Dottie Gunter from being introduced at this trial," and that the same privilege existed with "respect to preliminary hearing testimony

that's already been given." The prosecutor did not dispute the assertion that he could not call Dottie as a witness at trial by reason of spousal immunity, but contended that since she was unavailable to him as a witness, by reason of spousal immunity, he should be permitted to use her preliminary hearing testimony in his case in chief, because at the time of the crime, and at the time of the preliminary hearing, Gunter was not married to Dottie, and, therefore, no spousal immunity doctrine could be invoked to preclude such testimony. The trial judge agreed with that reasoning, and permitted the tape of Dottie's preliminary hearing testimony, including her cross-examination by Gunter's attorney to be played to the jury.

At trial, Dottie voluntarily testified as a witness for Gunter, and said that her prior statements as to what she had seen and heard on the night in question were lies, and that she had been prompted to lie through threats from the investigators and prosecuting attorney.

In his first point relied on, Gunter contends that the trial court erred by admitting into evidence, over objection, the preliminary hearing testimony of Dottie Gunter for the reason that "such testimony violated appellant's right to prevent his spouse from testifying against him," and that such testimony "contained evidence of a separate crime with which appellant was not charged."

We turn first to the spousal immunity argument. Gunter argues that the competency of Dottie to testify was determined by whether they were married at time of trial and, if so, an invoked privilege related back to cover prior statements made when they were not married. Gunter's brief does not cite any case in point to back up his theory, and even if he had, such reasoning would have no application under the facts here.

In 1985, the Missouri legislature amended the spousal immunity statute, § 546.260, to provide that in any criminal prosecution under Chapter 565, 566, or 568, RSMo, involving an alleged victim under the age of

18, a spouse shall be a competent witness against a defendant-spouse, and that no spousal privilege exists in such circumstances. The amendment was effective July 19, 1985, which was before the date of trial. The prosecution in this case was for a Chapter 566 crime, and the alleged victim was less than 18 years old. Since there was no spousal privilege to be invoked, it was error to admit the preliminary hearing testimony, as Dottie Gunter was available as a witness, over Gunter's objection. However, no one objected to the use in evidence of the preliminary hearing testimony for the reason that the statutory amendment made Dottie Gunter an available witness, and there was no assignment of error made for that reason in the motion for new trial.

 Where specific objections are not made at trial to the admission of certain evidence, and not raised in a motion for new trial, the alleged error is not preserved for appellate review. *State v. Franco*, 544 S.W.2d 533, 537 (Mo.1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275. Any review of the issue would have to be done under the plain error rule. *State v. Zeitvogel*, 655 S.W.2d 678, 686 (Mo.App. 1983). Plain error is not justified here, as we fail to see how the admission of the preliminary hearing testimony caused manifest injustice or a miscarriage of justice.

If Dottie Gunter had been called as a witness in the state's case in chief, there is no reason to believe that her testimony would have been any different than that which she gave later in the day when called as a witness by Gunter. She was married to Gunter at time of trial, said she loved him, did not want to see him behind bars, and believed that if he was acquitted she could provide a home for their children who were in foster care.

If she had testified in the state's case in chief, and recanted her prior statements, the state would have been permitted, pursuant to § 491.074, to introduce as substantive evidence her prior inconsistent statements made at the preliminary hearing, so the evidence would have gone in anyway, and the jury would have been allowed to

choose, as they did here, which of her two versions of the facts were true. When you add the fact that her preliminary testimony was merely corroborative of the testimony of the victim, who was a competent witness, we fail to see where there was any prejudicial error from admission of the preliminary hearing testimony.

Gunter also contends that Dottie's preliminary hearing testimony was inadmissible because it contained evidence of another crime that he may have committed, but with which he was not charged. He is specifically referring to her testimony that she saw him have sexual relations with W.B. "about a day" after Gunter asked her to approach the child regarding sexual relations with him.

 Generally, evidence of separate and distinct crimes other than those charged is inadmissible, unless evidence of the other crimes tends to establish motive, intent, absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime charged. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). In statutory rape cases such as this, evidence of other acts of intercourse between the child and the defendant are admissible as tending to establish a motive for the crime of statutory rape, i.e., satisfaction of defendant's sexual desire for the child. *State v. Graham*, 641 S.W.2d 102, 105 (Mo. banc 1982). The point has no merit.

 In his remaining claim of error, Gunter argues that the trial court erred in submitting to the jury instruction No. 4, which instruction defines reasonable doubt and contains the sentence that reads, "proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt." He contends that the words "firmly convinced" establishes a lower standard of proof than that expressed in cases such as *State v. Pyscher*, 179 Mo. 140, 77 S.W. 836, 842 (1903), where it was said that proof beyond a reasonable doubt " 'must be clear, positive, and abiding, and fully satisfying the minds and consciences of the jury.' " Instruction No. 4 tracks MAI–CR2d 2.20 which is a re-

quired instruction in criminal cases. § 546.070(4), RSMo Supp. 1984; MAI 2.20 Notes on Use 2. Once a pattern instruction is adopted by the Supreme Court, the court of appeals is powerless to declare the instruction erroneous. *State v. Turner,* 705 S.W.2d 108, 110 (Mo.App.1986). The point has no merit.

Judgment affirmed.

TITUS, J., concurs.

CROW, C.J., concurs and files opinion.

CROW, Chief Judge, concurring.

I concur in everything said in the principal opinion except the statement that this Court is powerless to declare erroneous a pattern instruction adopted by the Supreme Court of Missouri. While there are decisions of the Court of Appeals to that effect, I am unaware of any decision by the Supreme Court so holding. I see no need to address that issue in the instant case. In my view, the definition of reasonable doubt in MAI–CR 2d 2.20 does not constitute a lower standard of proof than the standards articulated in the cases relied on by defendant. I would deny the point on that basis.