The State v. Gabriel.

THE STATE v. GABRIEL, *Appellant.*

1. **Criminal Practice**: CHANGE OF VENUE. The statute (R. S. sec. 1856) confers no authority to award a change of venue to another circuit, where the ground of the change is the prejudice of the inhabitants of the county in which the cause is pending.

2. ——— : ———. An order of the court improvidently made in such case, transferring the venue to another circuit, is a nullity. The court can set it aside and transfer the cause to another county in the circuit.

3 **Larceny** : RES GESTAE. The *res gestae* in larceny is not restricted to the limited time when the fingers reach out and grasp the article in question. The *quo animo* and all actions and words whereby that is demonstrated form part of the *res gestae*, and thus become admissible in evidence, to explain the character of the act charged to be a crime.

4. ——— : ——— : DECLARATIONS OF THIRD PERSONS. Declarations of a third person are not hearsay, and, therefore, are admissible in evidence, where they are the natural and inartificial' concomitants of an act done by him, and are explanatory of such act and such act is a part of the *res gestae.*

5. ——— : ———. On the trial of an indictment for the larceny of sheep, where the transaction was made up of a variety of incidents extending over a period of several days, and was not at an end until the sheep were branded as his own by the defendant, all acts and words which occurred, or were related during that period of time, tending to show that defendant branded the sheep by mistake or inadvertence and not with a larcenous motive, were competent evidence in his behalf.

6. **Criminal Practice** : VARIANCE. Where one is indicted in the common form for grand larceny, an instruction is improper which authorizes a conviction under Revised Statutes, section 1315, if the property was lost and the defendant converted it to his own use with felonious intent.

7. **Criminal Pleading** : STATUTE. Where an indictment is founded on a statute creating an offence unknown to the common law, it must set forth all the constituent facts and circumstances necessary to bring the accused fully within the statutory provisions.

| | |
|---|---|
| 88 | 631 |
| 99 | 421 |
| 88 | 631 |
| 102 | 259 |
| 88 | 631 |
| 106 | 170 |
| 106 | 649 |
| 106 | 659 |
| 88 | 631 |
| 109 | 615 |
| 112 | 380 |
| 88 | 631 |
| 115 | 479 |
| 116 | 310 |
| 88 | 631 |
| 119 | 523 |
| 88 | 631 |
| 121 | 413 |
| 88 | 631 |
| 63a | 25 |
| 88 | 631 |
| 147 | 103 |
| 76a | 310 |
| 88 | 631 |
| 159 | 205 |
| 88 | 631 |
| 168 | 5486 |
| 88 | 631 |
| 177 | 125 |
| 88 | 631 |
| d179 | 4153 |

8.  Criminal Practice: PETIT LARCENY. It is only where the evidence shows, on a trial for grand larceny, that the value of the property taken would constitute petit larceny that the defendant may be convicted of the latter offence under Revised Statutes, section 1315.

9.  ———. Revised Statutes, section 1654, authorizing a conviction of an offence inferior in degree to the one charged in the indictment, where the latter consists of different degrees, has reference to cases where the evidence shows the higher offence belongs to homicidal crimes, etc.

*Appeal from Lawrence Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*Joseph Cravens* for appellant.

(1) The motion of defendant to strike this case from the docket in the Lawrence circuit court should have been sustained. The order of the Jasper circuit court, changing the venue to Greene county, gave that court jurisdiction, and it was forever gone from the Jasper circuit court. *Henderson v. Henderson et al.*, 55 Mo. 534; *Gilstrap v. Felts*, 50 Mo. 428; *State v. Daniels*, 66 Mo. 192. The statute on the subject of changes of venue has always been construed to be more directory than otherwise. *State v. Gates*, 10 Mo. 400; *State v. Elkins*, 63 Mo. 159; *State v. Underwood*, 57 Mo. 40; *State v. Sayers*, 58 Mo. 58; *State v. Whitlow*, 68 Mo. 91; *Porter v. State*, 5 Mo. 538. (2) The instruction asked by the defendant directing an acquittal should have been given, as there was no evidence to support the charge contained in the indictment, or to establish the commission of any offence, and in the absence of such sufficient proof, it is the duty of the court to direct an acquittal. *State v. Burgdorf*, 53 Mo. 65; *State v. Jaeger*, 66 Mo. 173. (3) The deposition of Taylor West should have been read to the

jury. It shows clearly that defendant was not trying
to steal Glasgow's sheep. When he found sheep among
his own flock that he did not own, this deposition tells us
he was driving them to the man who afterwards charges
him with stealing sheep. The acts of defendant in driv-
ing the sheep to Glasgow's house and of the boy in
driving them back were proper to go to the jury, and
the declarations accompanying the acts were admissible
as explanatory of such acts. They were admissible for
the purpose of showing the intent of defendant in deal-
ing with his neighbor's sheep. It seems we have reached
the period in this state when it is only necessary to ac-
cuse in order to convict. No proof of guilt of the offence
charged is necessary. *State v. Gressner*, 19 Mo. 247;
*Crawther v. Gibson*, 19 Mo. 365; *State v. Fritchler*, 54
Mo. 427; *State v. Graham*, 46 Mo. 490; *State v. Mat-
thews*, 20 Mo. 55; *State v. Underwood*, 37 Mo. 225.
(4) Instruction number one, given for the state, was er-
roneous. There was no evidence, not even a circum-
stance, going to show that defendant "stole, took, and
carried away" the sheep in question. *State v. Joeckel*,
44 Mo. 234; *State v. Schoenwald*, 31 Mo. 147; *Atkins v.
Nicholson*, 31 Mo. 488. (5) So the state's instruction
number two was wrong. The defendant could not be
convicted under Revised Statutes, section 1311. *State
v. Arter*, 65 Mo. 653; *State v. Slone*, 68 Mo. 101; *State v.
Dodson*, 72 Mo. 283.

*B. G. Boone*, Attorney General, for the state.

(1) The trial court was not authorized on defend-
ant's application for a change of venue, alleging preju-
dice on the part of the inhabitants of Jasper county, in
sending the case to Greene county, which was not in the
same judicial circuit as Jasper. Section 1856, Revised
Statutes. The order granting the change of venue being

without authority, was a mere nullity, and the court did not thereby lose jurisdiction, either to try the case or grant a change of venue to a county within the circuit. *State v. Kring*, 74 Mo. 612; *State v. Hayes*, 14 Mo. App. 173. (2) The court ruled properly in refusing to permit the prosecuting attorney to introduce evidence relative to defendant's character. This is never permitted, except in rebuttal of evidence offered by defendant as to good character. *State v. Creason*, 38 Mo. 372; 1 Denio, 282; Whar. on Crim. Ev. [8 Ed.] secs. 62, 63, 64. (3) The remark alleged to have been made by the prosecuting attorney, for which defendant assigns error, was not such as to prejudice the defendant and the court will not reverse. It is not every indiscreet remark made by a prosecutor that will justify a reversal. *State v. Guy*, 69 Mo. 432; *State v. Estis*, 70 Mo. 427; *State v. Stark*, 72 Mo. 37. Unless a prosecutor misstates the law or the facts in a case his conduct will not be reviewed by this court. *State v. Hopper*, 71 Mo. 433; *State v. Hoffman*, 78 Mo. 256. (4) The deposition offered in evidence was properly excluded. The matter it contained was not only irrelevant and incompetent, but mere hearsay. (5) The court gave four instructions at the instance of the state. The first instruction for the state is the usual one as to grand larceny, and was proper under the indictment and the facts. The second, in regard to petit larceny, was likewise correct. The third, which is complained of by defendant, in regard to the conversion of the property or the doing of any act by defendant with intent to convert the property to his own use, is a proper declaration of law applicable to this case upon the evidence., *State v. Matthews*, 20 Mo. 55; *State v. Martin*, 28 Mo. 580; *State v. Williams*, 35 Mo. 229; *State v. Gazell*, 30 Mo. 92. The instruction asked by defendant and refused was covered by the instruction given by the

court on its own motion, which contained a clearer and fuller statement of law than the one asked by defendant.

SHERWOOD, J.—The defendant, indicted for the grand larceny of several sheep, when tried, was convicted of petit larceny, though the only evidence as to their value showed that they were worth $32.50.

I. There was no error in setting aside the order transferring the cause to the circuit court of Greene county, since that order had been improvidently made, as section 1856, Revised Statutes, confers no authority to award a change of venue to another circuit where the ground of the change is the prejudice of the inhabitants of the county in which the cause is pending. And as the first order awarding a change of venue was a nullity, it was proper to act on defendant's application for a change of venue, and to award that change to Lawrence county in the same circuit.

II. Taylor West's deposition should have been admitted in evidence. It disclosed a state of facts which went a considerable way towards showing defendant had no larcenous designs upon the sheep of his neighbor; and taken with other testimony in the cause would have had a tendency to show that any apparently criminal act of defendant in branding Glasgow's sheep might have readily occurred through mistake or inadvertence, and not as the result of any improper motive. Other evidence in the cause introduced prior to the offer in evidence of West's deposition had established that the fences around defendant's enclosures were in a lamentably poor condition and dilapidated state, so that his sheep of which he had quite a large flock, readily got out of, and those of his neighbors readily got into his enclosure; that Glasgow, from whom the sheep are charged to have been stolen, lived two miles from defendant; that Glasgow's son at the time the sheep in question were missing,

was engaged in herding his father's flock, two hundred head on the open prairie ; that there was no water there, that the place of herding was close to the timber, and the timber extended round to where the defendant lived, and that there was water there ; that Glasgow's son sometimes left the sheep ; that some of the sheep of the defendant had the same ear marks as those of Glasgow, but which the latter knew were not his ; that some of the sheep of defendant and those of Glasgow "looked some alike" ; that the sheep of the latter when sheared in the spring, had red paint daubed on their foreheads, which by the time the sheep in question were missed from their herding place had mostly washed off ; that only fourteen of Glasgow's sheep were seen within defendant's enclosure on Sunday, at which time, according to the testimony of Strickland, they were not branded in defendant's mark, a "J" on the hip ; that according to Strickland this branding occurred on the following Monday morning when a number of sheep of defendant also, as well as those in question, were thus branded at the same time ; that on that morning a number of sheep of Glasgow's were marked as were his, with red paint on their foreheads, were not branded, but turned outside by defendant ; that a week before Glasgow's sheep were missed he had separated a bunch of stray sheep from his and had them driven by his son for about a mile in the direction of the defendant's farm, where afterwards he found them, when he went for his own with defendant's sheep unmarked and unbranded. That defendant exhibited every appearance of being desirous of giving up Glasgow's sheep ; offered and gave him every assistance in separating them from those of his own ; said that some of his sheep were out in the woods, and that if Glasgow and his son would come back on some other day he would have the rest of his sheep up and if any more of Glasgow's sheep were with his, Glasgow could

get them. This promise was kept by defendant on the following Friday when Glasgow obtained five more of his sheep; that Glasgow obtained in all thirteen sheep from defendant, which the latter had branded, worth $2.50 a head; that Glasgow claimed two other sheep which defendant had also branded, but defendant claimed them as his own and refused to give them up, and Glasgow, although willing to swear they were his, never brought suit for them.

The only circumstances in the case having any damaging tendency as to defendant's guilt are these: On Monday morning after Glasgow's son had asked defendant on the day before if there were any stray sheep in his pasture, and defendant had replied in the negative, defendant and his tenant, Strickland, according to the latter's story, after turning outside a number of sheep painted red in their foreheads, proceeded in broad daylight to brand as his own a large number of others, among them those claimed by Glasgow; and, according to Glasgow, that defendant when interrogated by him, when he went for the sheep on the next day, Tuesday, after the sheep were said to have been branded, said he branded the sheep because he thought they were his own; branded them four or five weeks ago, and then said a few days ago. And the statement of Strickland as to the sheep having been branded on Monday is corroborated by Glasgow's son who testified that when he saw them in the defendant's pasture on Sunday they were not branded, but when he and his father went for them on Tuesday they were branded the same as the defendant's.

In this attitude of the case, any legitimate evidence having any tendency to exonerate defendant from the charge made against him; having any bearing on the subject of guilt which would obviously include the circumstances throwing light on the transaction, should

have been admitted. Such evidence, though slight, was that contained in the deposition aforesaid, which was to the effect that the witness lived one and a half miles from defendant's residence, and between that point and where Glasgow lived; that some time in the month of June, which, it seems, was prior to the time when Glasgow missed from his flock a portion of his sheep, the defendant came to witness' place driving a bunch of fifteen or twenty sheep towards Glasgow's and remarked that they were Glasgow's sheep, and that he was taking them home; that witness did not observe any marks or brands on them; that in two or three days afterwards, Glasgow's son came by witness' house with about a dozen of the sheep and said they were not their's and that they were a part of the sheep defendant had brought over to his father's a few days before, and that his father had sent him back with them to the defendant.

If the act of Gabriel in driving the sheep towards the residence of Glasgow before the time of the commission of the alleged larceny possessed any probative force, then his declarations which accompanied that act constitute a part of the *res gestæ* giving, as they did, quality to the act and clothing the mere-nude act with the garb of legal intelligibility. The doctrine is well settled that whatever words depict the character of the principal fact, shed upon it the proper light when it is brought before the camera of judicial investigation, are "verbal acts, indicating a present purpose and intention, and are, therefore, admitted in proof like any other material facts." 1 Grlf. Evid., sec. 108 and cases cited.

The *res gestae* in larceny is not restricted to that limited period of time when the fingers reach out and grasp the article in question, any more than are the *res gestae* confined in a case of homicide to the knife thrust which loosens the "silver chord" of life. The *quo*

*animo*, and all actions and words whereby that is dem-
onstrated, form part of the *res gestae*, and thus become
admissible. *Garber v. State*, 4 Coldw. 161, and cases
cited. "Nor are there limits of time within which the
*res gestae* can be arbitrarily confined. They vary in
fact with each particular case." "The test is, were the
declarations the facts talking through the party, or the
party's talk about the facts. *Instinctiveness* is the
requisite, and when this obtains, the declarations are
admissible." Whart. on Crim. Ev., secs. 262, 691. In
the case at bar, there was much in the evidence already
related, and much in that to be presently mentioned,
tending to show that mistake or inadvertence, and not
larcenous motive, caused the branding of Glasgow's
sheep by defendant. His act then of separating the sheep
spoken of from his own, and driving them home to the
residence of Glasgow, whom he believed to be the owner,
so shortly before the act litigated in the present instance,
had a tendency to show that honesty, and not dishonesty
of purpose actuated him throughout the whole transac-
tion. And even when the statements were made by an
accused party *after* the commission of the supposed
criminal act, where such statements were plainly not
self-serving, but the usual and natural utterances, such
statements, showing as they did, the *animus* of the act,
were held by this court admissible. *State v. Graham*,
46 Mo. 490.

And for these reasons, the verbal declarations of
Glasgow's son, when driving the sheep back, were also
admissible, though the statement of a third person; for
the rule is, that when such declarations of a third party
are the natural and inartificial concomitants of an act
done by him, and are explanatory of such act, and such
act is part of the *res gestae*, such declarations are not
hearsay, and are therefore admissible. *Hunter v. State*,
40 N. J. L. 495; *State v. Hayden*, 9 Rep. 237. Alluding

to the rule excluding hearsay, an author of eminent and acknowledged authority says: "The principle does not extend to the exclusion of any of what may be termed real or natural facts and circumstances, in any way connected with the transaction, and from which any inference as to the truth of the disputed fact can reasonably be made." 1 Starkie's Ev. [6 Ed.] 65. If on the morning when the sheep were said to have been branded by defendant, he had driven a bunch of sheep out of his enclosure, and driven them toward Glasgow's, declaring his reason therefor as before stated, this certainly would have been competent; and it does not seem that the competency of such evidence is affected, or that it any the less fails to disclose the all-important fact of the animus which actuated him, because several days had elapsed between the occurrence and the one which gave rise to the prosecution. Here the transaction was made up of a variety of incidents, and extended over the period of several days, and it was not at an end until the sheep were branded. Anything, therefore, whether of acts or words, as before related, which occurred, or were uttered, during that period of time, tending to elucidate the principal fact in dispute, to-wit, the motive with which the sheep were branded, was competent.

III.   It is insisted that the instruction in the nature of a demurrer to the evidence, requested by the defendant, should have been given. There are some things in this record, which in addition to those previously mentioned, give color to this position. Allen testified that about three years before he sold defendant thirty-eight or more sheep, a cross between Southdown and Cotswold, and that such a cross produces sheep with motley faces and red legs; and the testimony of Glasgow and his son that some of the sheep branded in defendant's mark were Glasgow's, is based upon just such peculiarities. In addition to that, Strickland, as he confesses, was hostile to

defendant; moreover his character for truth and veracity was declared bad by a majority of the witnesses examined on the subject. But notwithstanding this, it is not certain that the court erred in refusing the instruction in question. If defendant with knowledge that some of the sheep he was about to brand belonged to Glasgow, and branded them with a view to conceal their identity, and to establish a fictitious ownership in himself, this would make his crime complete; and if Glasgow's son came on Sunday and claimed the sheep, and defendant branded them on Monday, and then on Tuesday told a falsehood as to when he branded them, this was a circumstance worthy of consideration by the triers of the facts as bearing on the question of the motive with which the act was done. 2 Best. Evid., sec. 576. For these reasons it was proper to let the case go to the jury.

IV. The third instruction given at the instance of the state was erroneous for several reasons: The indictment is in common form for grand larceny; and it has been ruled in such case that an instruction is improper which, based on section 1315, authorizes a conviction for that offence, if the property was lost, etc., and defendant converted the same to his own use with felonious intent, etc.; and that this was true notwithstanding the evidence would have sustained a conviction under section 1315. Norton, J., remarking: "The indictment in the case at bar charges the defendant with a felonious taking, stealing and carrying away of the watch, and this was all he was called upon or required to defend. We think that the instruction complained of authorized a conviction for the offence created by section 45, *supra*, and as the indictment on which the defendant was arraigned and tried, failed to allege the facts necessary to constitute an offence under that section, that the court erred in giving the instruction. If it was intended to hold the

defendant liable under that section, a proper indictment should have been preferred for that purpose, so that defendant would have been notified of what he would be required to defend." *State v. Arter*, 65 Mo. 653. The rule is that where the indictment is based upon a statute creating the offence, an offence unknown to the common law, the indictment must set forth all the constituent facts and circumstances necessary to bring the accused perfectly within the statutory provisions. *People v. Allen*, 5 Denio, 76 ; 1 Arch. Crim. Prac. p. 68, note 1 ; *Hall v. State*, 3 Cold. 125 ; Bishop on Stat. Crimes, secs. 418, 421, 422.

And indeed the constitution of our state requires that the accused be informed of the "nature and cause of the accusation" against him. Art. 2, sec. 22. This command would not be complied with were it permitted to indict a man for the larceny of an animal and then convict him on evidence, not that he *stole* the animal, but that he branded or killed it with intent to steal it as set forth in section 1311. Nor does section 1315 apply for the reasons already given. Nor does either that section or section 1316 apply for the additional reason that there is no evidence that the sheep were lost or that they were strays. And the instruction was also erroneous because there was no evidence whatever, aside from the act of branding that the defendant did any other act, etc.

The very case this record presents was anticipated in *State v. Stone*, 68 Mo. 101, where Norton, J., after alluding to the constitutional provision I have referred to, and to the necessity of indictments based upon purely statutory provisions, being so drawn as to charge the offence as in the statute defined, remarks : "It might as well be contended that a person indicted under section 25, *supra*, for stealing a hog, could be convicted under section 30, which makes it a larceny for any person to alter the mark or brand of a hog with intent to steal or convert it to his own use," etc.

V. In addition to the reasons given in the last paragraph, the instruction as to petit larceny was also erroneous for several reasons, one arising upon the evidence, the others upon the law. The only evidence introduced as to the value of the sheep was that of Glasgow, the owner. His testimony showed them to be worth $32.50. It is true that section 1319, a new section, allows a defendant on trial for grand larceny, to be convicted as was the defendant, but this is only "*when the evidence shows the value of the property taken would constitute a case of petit larceny*.." And section 1654 does not help the matter, as that section being in *pari materia*, must be read in connection with the one already quoted, and besides section 1654, while it allows a conviction for a lesser offence when a greater one is charged, only allows such conviction when the evidence shows the higher offence to have been committed in cases of homicidal crimes, etc. And, besides, the jurors are sworn to try the accused according to the law and the evidence; they cannot, without evidence, arbitrarily discount the testimony of a witness and then base a verdict upon such discounted testimony. Their sole reliance for the value of the sheep was upon Glasgow's evidence, and they could not invoke to their aid their own inner consciousness, or, as it is elsewhere expressed, "their knowledge of current events."

VI. The defendant having been tried for and convicted of an offence not set forth in the indictment, the judgment must be reversed and the cause remanded. All concur. Norton, J., in the result.