STATE of Missouri,
Plaintiff–Respondent,

v.

Jeffrey A. WHITMAN,
Defendant–Appellant.

Jeffrey A. WHITMAN,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 54832, 56633.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 17, 1990.

Steven Michael Dioneda, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JOSEPH J. SIMEONE, Senior Judge.

These proceedings are consolidated appeals by Jeffrey Arthur Whitman from his convictions for kidnapping, rape, sodomy and armed criminal action, and from an order denying his motion to vacate sentence filed pursuant to Rule 29.15. We affirm.

Appellant, Whitman was charged, tried, found guilty and sentenced on six counts—two counts of forcible rape, two counts of kidnapping, one count of sodomy and one count of armed criminal action for acts committed on June 11, 1987 against two women. Sections 566.030.2, 566.060.2, 565.110 and 571.015.1, R.S.Mo.1986. The appellant was tried in March, 1988 for the kidnapping and rape with the use of a gun, of N.B. and L.H.

These two women testified at trial. N.B. testified that at about 11:30 p.m. on the night of June 10, 1987, L.H., with whom she lived, came home from work and the two went to a pizza parlor some six blocks away where L. was to obtain some money from a friend. They then went to the Jack In The Box restaurant on South Jefferson, tried to open the door but the place was closed. They walked across the parking lot. As they did, a dark Ford Thunderbird pulled up alongside them. They stopped. A man inside the car said something about a "date." He had a small, silverish handgun in his hand and told the women to get in or "he'd kill us." They got in on the passenger side. L. sat between the man and N. sat in the front seat. The man then drove south on I-55. During the ride, the man said that he got the car from a man on Cherokee Street coming out of a bar. When L. asked about the whereabouts of the man, he said "he was in the trunk." N. was "scared to death." The man, later identified as the appellant, drove to Mera-

mec Bottoms Road in St. Louis County, and on the way said he was going to have some "fun." They drove to an abandoned clubhouse on Meramec Bottoms and appellant backed the car into the garage. He told the women to take their "shirts off." He fondled L., "bit" her breast, and told L. to commit an act of sodomy on him. She refused, so he told N. to do so. She did. Then L. was told to get into the back seat where appellant had intercourse with her. He then told N. to get into the back seat and had intercourse with her. Testimony of these women indicated that there was never any discussion about money being exchanged for sex.

After the sexual activity, all got dressed, but N. "kicked" her underwear under the car. The three left the premises, returned to the highway and drove north toward the City. During the drive, appellant said his name was Jeff and that he worked in construction. He did not disclose his last name. The two women were let out of the car at Arsenal and Lemp at about 1:30 a.m., June 11, 1987. When they exited the car, they waved and screamed for a police car. Soon, Officer Michael Karl picked them up, and they were taken to a hospital and to the County police. In a few days an officer presented some photographs to N. and she picked out appellant as the assailant. She later identified him in a lineup.

L.H. corroborated N.'s testimony. Her testimony was similar to N.'s. During intercourse with L., she testified the gun was on the back by the back window of the car. She identified the appellant as the assailant from photographs and from a lineup.

During the examination in chief of L., the court called counsel to the bench and stated that it had been brought to its attention that juror No. 4 "keeps sleeping, closing her eyes and nodding her head." The court ordered counsel to instruct the sheriff to watch the juror.

Officer Karl testified that at approximately 1:30 a.m. on June 11, 1987, he observed the two women standing in the 3100 block of Lemp, just off I–55, "yelling and screaming" and waving for him to pull to the curb. They told him of the episode and gave a description of the car. The officer testified that the women were hysterical, crying and scared. On re-cross, the officer was asked by defense counsel whether he was familiar with "problems of prostitution" at the Jack In the Box area. Objection was made and sustained.

While the women were at the hospital they were examined and sexual assault kits were made up. Tests were made also of the blood and saliva of appellant. A forensic scientist testified that the tests on N. showed positive seminal fluid, and the tests on L. showed presence of sperm. Based on the scientist's experience, she testified that both had had intercourse. The blood and saliva tests of appellant showed that he could not be eliminated as a suspect.

A police officer testified that he went to the house on Meramec Bottoms Road, took pictures, and on the floor of the garage were a "pair of yellow panties"—those of N.

On June 17, 1987, appellant was arrested. The trial began March 7, 1988.

During the course of the voir dire, the circuit attorney asked the panel whether anyone, or any member of their family had been a victim of an offense of a sexual nature. One person, Z.H., answered at side bar that her niece had been raped by a parolee, but that that experience would not affect her ability to be fair and impartial.

Also during voir dire, in answer to the same question, juror No. 53 stated that she was a victim of child molestation by her stepfather when she was 10 years old. She was asked whether there was anything "about that experience that would cause [her] to be less than fair in this case." She replied, "no." The molestation was a continuing one for about five years. During the questioning, defense counsel stated that she noticed juror No. 53's eyes "getting a little watery." The venireperson replied, "I really don't think so." She stated that her past experience would not "in any way interfere with her ability to listen and decide." She also stated that she would not be inclined to "vote guilty because of what happened." When asked by the court: "All right. The bottom line, you

feel that you can be fair and impartial in spite of your personal experience," she replied, "Yes, I do." She also stated she would be able to judge the facts and apply the law as the court gives it. Defense counsel moved to strike juror No. 53 for cause because she believed her testimony was "equivocal" and that she noticed her eyes "got sort of watery." The court denied the motion stating that on the record there is no basis for striking her for cause.

Also during voir dire, the circuit attorney explained that it is the state's burden to prove the elements of the offenses, and if the jury found appellant guilty then "its your job to assess what the punishment is and we're going to talk about that." The circuit attorney explained the range of punishment for rape, sodomy, kidnapping and armed criminal action and asked whether the venirepersons could follow the court's instructions on the range of punishment. Defense counsel then questioned the venire. When asked whether anybody has "any problems they might have based on the charge," Z.H. indicated that "I can do the listening but the judgmental part at the end, I don't want no part of that." She said that it would be difficult, "for religious reasons." But she said, she "can do it" and follow the law. At side-bar, Z.H. was questioned about her ability to assess the facts and to assess punishment. She stated that because of her religious beliefs she did not want to sit in judgment and did not want to take part in sentencing someone. She also said did not "want to" assess punishment, not that she "could not" do so. The court questioned Z.H.

The Court: Part of your duty as a juror who hears the case will be that if there is a finding of guilt is to assess punishment.

Venireman H.: I know, that's what I don't want no part of it.

The Court: Is it a fact that you don't want to or you can't?

Venireman H.: I can but I don't want to.

The Court: All right, ma'am.

[Defense counsel]: You may not even get to the punishment unless ... you agree with the verdict.... So do you think that if you were firmly convinced that he was guilty that you can decide?

Venireman H.: No doubt about it that I could.

[Defense Counsel]: Okay.

[Circuit Attorney]: And you understand that—Let's assume he's found guilty of something.

Venireman H.: Yes.

[Circuit Attorney]: All 12 of you will have to agree on what the punishment is, do you understand?

Venireman H.: That's what I'm talking about, I understand what you're saying. Do you understand me?

[Circuit Attorney]: Yes, ma'am.

[Defense Counsel]: You would be able to discuss it with the others?

Venireman H.: No doubt about it, I can do that.

[Defense Counsel]: That's all we ask.

The circuit attorney moved to strike Ms. H. for cause because of the equivocal nature of her answers and because she injected her religious beliefs as to punishment. Defense counsel stated that Ms. H. had the ability to assess the facts and reach a verdict and is "capable of assessing punishment." She just "doesn't want to" assess punishment. The court stated that this was a matter of discretion, and that "my judgment is that she should be excused for cause because I think she does equivocate and I think there are a number of people sitting back there ... who will be unimpaired." "This lady equivocates on assessment of punishment."

At the close of the voir dire, defense counsel made several oral motions *in limine*. One of the motions was that she believed that the victims will testify "something to the effect that the defendant had told them that he had stolen the car that they were in, and that there was a body in the trunk, and that he ... was in town to help break somebody out of prison." Counsel stated that this would involve evidence of uncharged criminal conduct and asked that no reference be made to those statements because they would be prejudicial. The circuit attorney countered by stating that one of the issues in the case is

whether the victims consented to the offenses and that the statements about stealing a car and a body in the trunk goes toward a state of mind of the victims as to consent, and that he should be allowed to bring in evidence of why the victims "cooperated." The court believed the admission of this testimony was a matter of discretion and related to the issue of whether the victims willingly engaged in the sexual conduct or did it under a "threat or out of fear." The court believed the statements relevant and overruled the motion giving defense counsel the opportunity to object when it is offered "considering all other evidence in its totality."

The panel of jurors were then sworn and the trial proceeded.

Appellant took the stand and testified. His version of the events on June 11, differed from that of the two women. He testified that sometime before the early morning of June 11, he had been working on his car and a friend of his called him and told him he was going to come over and show him his new car. They left the house and went to St. Charles. He took his girlfriend's car—a brown Thunderbird—after an argument with her and went to his old neighborhood around Cherokee and Jefferson. He was riding around looking for some girls and had intentions of picking up a prostitute. He had picked up prostitutes in that area before. He saw N. and L. in the parking lot of Jack In The Box, sitting on a wall. When he drove up, L. approached him and asked if he wanted a date. He offered her a marijuana cigarette because if she took it she would not be an "undercover cop." L. took it and yelled for N. to come over. L. said "do you want the date or not." Jeffrey replied "Yeah" and she said it would be $30. L. started to get in the car, but said "wait for N." He drove south on I–55, and he asked if they knew about the Meramec River Bottoms where all the "parties" are. They both said, "Yes." So he decided to go there. It was his idea. During the drive they talked. He drove to the abandoned house with which he was familiar. He parked in the garage. He had intercourse with the women. When the sexual activity was completed he

returned to St. Louis to Arsenal and I–55. He took the women to Utah and Lemp. He denied having a gun with him that night. He denied he told them he stole the car or that he had a body in the trunk, and he denied that he kidnapped them. He admitted to smoking marijuana and was feeling "pretty high." On cross-examination he admitted he had picked up prostitutes "about twice." When he let the women out of the car, L. started saying that he owed her $30 and he said that he "already paid them with the weed." N. got "mad."

Juanita Lewis, the assistant manager of Jack In The Box who had the night shift, testified that on several occasions they would have to call the police for women soliciting men in the drive-through.

At the close of the evidence, counsel for appellant made a motion for judgment of acquittal which was denied. Instructions were given on rape, kidnapping, sodomy and armed criminal action, and arguments made.

The circuit attorney made his closing argument. He stated that "what you have to find is that these acts happened and basically they happened without consent." He continued:

Now, the job that you're going to have to focus in on was this a consensual activity. And the flip side of that is if you say it's consent, then what you are saying is that these two young women are prostitutes because that's what he's saying.

An objection was made and overruled. The prosecutor continued:

And you recall who interjected this prostitution business into this case, the defense.... Also I submit to you that one of the two sides is lying and I'm going to submit to you that Mr. Whitman is lying about how all this happened. Now when someone comes in and tells you the sky is blue, you can believe them. But wouldn't it be better if they brought you a picture of the sky or some sort of corroboration to back up what they are saying so you would believe

them further, ... That's called corroboration.

Again, defense counsel objected on the ground that this was shifting the burden of proof. The objection was overruled. The prosecutor continued:

And think about the corroboration in this case ... Let's talk about this prostitution business ... Do prostitutes hold down a regular job during the day and go out and sell their body at night? ... Now, I'll grant you that these young women were out at midnight in the area where they live. But you have got to walk a mile in their shoes, ladies and gentlemen. They live down there. It's not where you live or where I live, it's where they happen to live. And is every woman that walks out at midnight in that area a prostitute? And if you make that allegation, you sure as heck better be able to back it up.

Any evidence that either of them were ever convicted of being a prostitute. None. Any evidence that either of them were ever arrested for being a prostitute?

Again, objection was made on the ground that evidence of arrest is not "proper." The court sustained the objection and instructed the jury to disregard the statement. The prosecutor then argued that after the events, L. moved from N.'s to her family house and that if she were a prostitute was it reasonable to believe she would leave her working area. He also argued whether it was reasonable to approach a police car after they were let out of appellant's car.

During the opening portion of the state's argument, defense counsel approached the bench and informed the court that the sheriff had told her juror No. 4 was sleeping. The court said "I have not seen enough of her sleeping or appearing to be sleeping. It's been called to my attention one time earlier but I've kept my eye on her since then. I've seen her eyes open most of the time."

During defense counsel's argument the court called counsel to the bench and told them he "decided to make a record" concerning the juror. He said he saw juror number 4 close her eyes and open them again slowly and "she's been in and out of kind of a drowsy state here." "A lot of people close their eyes and listen to things.... We'll keep an eye on her for the rest of the argument. I'm not pleased with what I see but I don't want to embarrass her, and hopefully she'll stay alert."

In the closing portion of the state's argument, the prosecutor argued the unbelievability of the appellant's testimony. "It is not reasonable to believe that they made up the story and then be taken to St. Anthony's Hospital and be physically examined the way they were and then come down to the circuit attorney's office and say the same thing...." Objection was made on the ground that they said the same thing at the circuit attorney's office. The objection was sustained, and the jury instructed to disregard the statement.

Near the end of the second portion of the closing argument, the prosecutor stated:

And they contacted the police immediately, and now what? [Defense counsel] said she is not trying to prove them out to be prostitutes, but why did she bring in that person from Jack In The Box to say what she said if she wasn't trying to prove them to be prostitutes.

They have to suffer the ultimate humiliation, being raped, and then they have to come and suffer a little more and come in and tell twelve strangers about it while the guy who did it to them is sitting fifteen or twenty feet away from them and then they are called prostitutes. When you make an allegation like that you better back it up. You better be able to prove it.

An objection was made and sustained; and the jury instructed to disregard the last statement.

At the close of the argument defense counsel moved for a mistrial because the state's argument was so fraught with "inconsistent—incorrect statements of the law, so full of arguments that was not supported by the evidence, that it ... amounted to prosecutorial misconduct and

that a mistrial is warranted by the argument."

The court thought that a mistrial was so serious and drastic a remedy that it was not warranted, "In its totality," the court said "I don't think that this amounts to any injustice to the defendant in this cause." The court overruled the motion.

After the jury deliberated, it found the appellant guilty on all six counts.

After a motion for new trial was overruled, Whitman was sentenced on April 29, 1988 to a total of 55 years.

On April 29, 1988, also the court granted leave to trial counsel to withdraw and permitted other counsel to appeal and to ascertain whether grounds existed for the filing of a post-conviction motion pursuant to Rule 29.15.

On November 29, 1988, a motion to vacate was filed. The motion alleged ineffective assistance of counsel in that trial counsel failed to properly investigate or present exculpatory evidence which was brought to her attention. He alleged that Randall Taliaferro would have testified that one of the alleged victims, L.H., had stated, prior to the trial, that she had not been raped but had consented to sexual intercourse with Whitman.

An evidentiary hearing was held on February 16, 1989, at which Whitman, his sister, and his defense counsel testified. Taliaferro did not testify.

At the evidentiary hearing, Whitman testified that he and trial counsel had conflicts and that information came to him that one of the women stated that she was not raped, and this was information presented to trial counsel, but counsel didn't use it "mostly because she said that he [Taliaferro] didn't want nothing to do with it." He further stated that he asked counsel to take depositions of other potential witnesses and the victims, and to use the witnesses at trial.

At the hearing, movant's counsel informed the court that she had been searching for Taliaferro and other witnesses for months and he was now located in Ironton, Missouri. Counsel moved to reopen the case. The court indicated that it could not string out the hearing, but said that it would take the matter under submission, and movant could petition the court before a ruling is made, and if there is something additional it would be considered. On March 24, 1989, this motion to reopen the case was denied.

Whitman's trial counsel testified at the evidentiary hearing. She testified that she is an attorney in the Public Defender's Office and had six years experience in criminal law. She did not feel there was a conflict with Whitman, or that Whitman was prejudiced in any way. As to Randy Taliaferro, counsel stated that she talked to him while he was living in Arkansas, and talked to others who supposedly heard L.'s statement. Counsel said that "nobody else really remembered ever hearing the statement, and I decided against calling [Taliaferro] because I thought so many other things he would have said prior to what the victims' statements were would be detrimental."

At the conclusion of the hearing the court stated that it would not rule on the matter before March 1, and would consider anything that might be presented before March 1. On March 9, a formal motion to reopen the cause was filed stating that Taliaferro had been located and that he was willing to testify. The statement was attached to the formal motion. The statement indicated that Taliaferro was present the night of the alleged rape and that the women were upset and said they were raped. But later at a party L. said she was not raped and that it "was pleasurable and if she could have it, she would do it again." However, N. said "Well, I was raped." In the statement Taliaferro said he met with defense counsel and told her about L.'s statement.

On April 12, 1989, the court entered its findings of fact and conclusions of law. The court found that movant failed to establish any grounds for relief by a preponderance of the evidence and that he was not prejudiced by counsel's failure to meet the standard of a reasonably competent attorney. The court found that movant's

testimony was lacking in credibility. The court therefore denied the motion.

On this appeal, appellant raises seven points for reversal. He contends the trial court erred (1) in overruling his motion for mistrial made at the conclusion of the trial because of the cumulative effect of the prosecutor's closing argument; (2) in overruling his motion to vacate alleging that counsel was ineffective in failing to present the testimony concerning Taliaferro and in denying his motion to reopen the post-conviction case because Taliaferro had been located and was present to testify, (3) in not granting a new trial because the allegations in the motion for new trial had such a cumulative effect which resulted in prejudicial error, (4) in overruling his oral motion *in limine* concerning his statements to N. and L. that he had stolen the automobile and had a body in the trunk because this evidence related to other uncharged crimes, (5) in not removing the juror who kept falling asleep during the trial and closing arguments, (6) in sustaining the state's motion to strike from the jury panel Z.H. for cause because the juror never indicated that she could not evaluate the testimony and assess punishment, and (7) in overruling appellant's motion to strike juror No. 53 for cause.

■ As to appellant's first point that the court erred in overruling his motion for mistrial at the end of the trial because of the effect of the prosecutor's argument, we find no prejudicial error. Appellant contends that the prosecutor's argument amounted to prosecutorial misconduct in that the prosecutor misstated evidence, referred to facts not in evidence, attempted to shift the burden of proof and called on appellant to present evidence which the prosecutor knew was inadmissible and that the cumulative effect was prejudicial.

■ It is true that a prosecuting attorney in a criminal case represents the people and it is his duty to be impartial and to refrain from conduct that causes him to be a heated partisan who appeals to prejudice and seeks a conviction at all costs. *State v. Wintjen,* 500 S.W.2d 39, 43–44 (Mo.App. 1973). His obligation is not simply to obtain a conviction but to see that justice is done and that the accused gets a fair trial. *State v. Hicks,* 535 S.W.2d 308, 311 (Mo. App.1976); *State v. Jackson,* 664 S.W.2d 583, 584 (Mo.App.1984); *State v. Heinrich,* 492 S.W.2d 109, 115 (Mo.App.1973).

However, whether or not the remarks of counsel are improper or prejudicial under the facts of a particular case necessitate the discharge of the jury are matters which rest largely within the discretion of the trial court, and the appellate court will not interfere unless the record shows an abuse of such discretion to the prejudice of the appellant. *State v. Wintjen, supra,* at 42.

As to oral argument of counsel, the principle is well established that the propriety of argument is addressed to the discretion of the court and a reversal on such grounds occurs only upon an abuse of such discretion. *State v. Jewell,* 473 S.W.2d 734, 741 (Mo.1971); *State v. Neal,* 591 S.W.2d 178, 183 (Mo.App.1979); *State v. Moore,* 620 S.W.2d 370, 373 (Mo. banc 1981).

The fundamental precept is that it is within the trial court's substantial discretion whether to grant a mistrial. The reason for this is that the trial court is best placed to observe and evaluate the propriety of the argument. *State v. Spinks,* 629 S.W.2d 499, 502 (Mo.App.1981). The trial court has broad discretion as to the argument and a conviction will be reversed only if it is established that the comments had a decisive effect on the jury's determination. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982), *cert. den.,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Jackson,* 743 S.W.2d 493 (Mo.App.1987).

The declaration of a mistrial is a drastic remedy. It is granted only with the greatest caution and only in extraordinary circumstances. *State v. Gilbert,* 636 S.W.2d 940, 943 (Mo. banc 1982); *State v. Lee,* 654 S.W.2d 876 (Mo. banc 1983). The motion is addressed to the sound discretion of the trial judge. *State v. Lumsden,* 589 S.W.2d 226 (Mo. banc 1979). The ruling of the trial court will be disturbed on appeal only when the record shows a manifest abuse.

Under these well-known principles, we do not find such an abuse of discretion by the trial judge.

Appellant complains about various portions of the prosecutor's argument—that there was no evidence that the victims were ever convicted or arrested for prostitution, if there is such evidence it had better be backed up, and the victims had been consistent in their statements from the time of their initial contact with the police to contacts with the circuit attorneys office.

As to each of these comments, defense counsel moved to strike. The motions to strike were sustained, and the court directed the jury to disregard the statements. At the time of the individual comments no motion for mistrial was made. The motion for mistrial was made at the close of the trial.

The trial court commented that as a mistrial is such a serious and drastic remedy it was not warranted here. The trial court explicitly stated that it did not think any injustice was caused to the defendant in the totality of the case.

The important issue in the whole case was whether or not the women consented to the sexual acts, and the issue of prostitution near the area of the Jack In the Box was injected. The trial court complied with the requests of defense counsel to strike the alleged improper comments by the prosecutor and directed the jury to disregard them.

Under the circumstances we cannot hold there was an abuse of discretion on the part of the trial court in denying the motion for mistrial because of the state's argument.

■ Akin to appellant's first point is his third. In this point, he contends that the trial court erred in not granting a new trial because of the cumulative effect of all the points raised in the motion for new trial which allegedly resulted in prejudice to the appellant. He refers to all the alleged errors—from the court sustaining the state's motion to strike juror Z.H. and overruling defense motion to strike juror No. 53 for cause, to prosecutorial argument, and the motion to vacate. He relies on *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659 (1952). In *Allen*, a manslaughter case, there were numerous egregious, errors ranging from the prosecutor's opening statement that the defendant said nothing to the police to hearsay identification. The Supreme Court reversed the conviction when the court warned the prosecutor that he was approaching a point where a mistrial might become operative. The court said the overall prejudicial effect was "creeping and cumulative." *Id.* 251 S.W.2d at 662. Where there are multiple errors which are cumulative and egregious, it has been held that such cumulative errors are reversible. *State v. Burnfin*, 771 S.W.2d 908, 913 (Mo.App.1989)—argument of defendant's aggressive character in the past. *Faught v. Washam*, 329 S.W.2d 588 (Mo.1959).

The trial of this cause, however, did not rise to the level of the facts in *Allen* and *Burnfin*. The record shows that the trial court had control of the proceedings and exercised its discretion in ruling on all matters.

A careful reading of the record does not show that the cumulative effect of all the alleged errors amounted to an unfair trial.

■ As to appellant's fourth point that the court erred in overruling his oral motion *in limine* requesting that the court exclude the statements of the two women that the appellant told them he had stolen the car and that there was a body in the trunk, we find no error.

■ It is well established that proof of the commission of separate, distinct and unrelated crimes is not admissible. *State v. Rose*, 727 S.W.2d 919, 921 (Mo.App.1987); *State v. Holbert*, 416 S.W.2d 129, 132 (Mo. 1967); *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954); *State v. Jackson*, 519 S.W.2d 551, 558 (Mo.App. 1975). But there are many exceptions to this principle. If the separate and distinct crimes tend to establish motive, intent, absence of mistake or accident, a common scheme or plan or identity, or the *res gestae*, evidence of the separate offenses are

admissible. *State v. Reese, supra, State v. Gunter,* 715 S.W.2d 576, 578 (Mo.App. 1986); *State v. Jackson, supra,* 519 S.W.2d at 558. It has also been held that if it is relevant to prove the defendant's guilt of the particular crime of which he is being tried, and not merely to show the defendant's bad character or his disposition to commit the crime, then evidence of the separate crimes is admissible. *State v. Rose, supra,* 727 S.W.2d at 921. The state may paint a complete picture of the crime charged and need not sift and separate the evidence. *State v. Kenley,* 701 S.W.2d 185, 186 (Mo.App.1987).

In the case at bar the appellant was being tried for the crimes of forcible rape and other offenses. The hard-fought issue in the case was whether the two women consented to the sexual activity. One of the elements of rape is non-consent. Defense counsel made the motion *in limine* at the opening of the trial to exclude the alleged statements of the defendant that he stole the car and had a body in the trunk. The prosecutor countered that the issue was one of consent and that the statements went toward the victims' state of mind. The court stated that it believed the admissibility was a matter of discretion and the statements related to whether the victims willingly engaged in the sexual conduct or whether their engagement was under threat or "out of fear."

There was no abuse of discretion. The admission was relevant to attempt to show the defendant's guilt and to show the elements of the offenses charged. The statements were not admitted merely to show the appellant's bad character or his disposition to commit the crimes. There is no error in this regard.

▮ Next appellant complains that the court erred in not removing one juror because she was falling asleep during the trial.

On several occasions it was noted that the juror kept closing her eyes and nodding her head. The first time was during the testimony of L. During the state's closing argument, defense counsel approached the bench and told the court the juror was sleeping. The court said that it had kept an "eye on her" and had seen her eyes open most of the time. The court made a record.

▮ In order to prevail upon a claim of juror misconduct, it must be shown that the conduct was prejudicial to the defendant. *State v. Edmondson,* 461 S.W.2d 713, 726 (Mo.1971), and much lies in the discretion of the court. A lapse of attention is not grounds to remove a juror for sleeping. *State v. Tabor,* 657 S.W.2d 317, 319 (Mo.App.1983). In *Tabor,* a juror was apparently asleep and had to be awakened by the sheriff. Counsel asked that juror be removed. The court denied the request because the juror had fallen asleep for a period of time. In upholding the trial court's action, the appellate court stated that a trial court's response to juror misconduct lies in its sound discretion. But, a trial court may exercise its discretion in replacing a juror with an alternate when a juror naps. Section 494.065, R.S.Mo.1986; *State v. Youngblood,* 648 S.W.2d 182 (Mo. App.1983).

In the case at bar, the trial court did not abuse its discretion. After the first occasion, the sheriff was directed to watch the juror. The court kept an eye on the juror. The court made a record. It indicated that the juror had been in and out of a drowsy state and a lot of people can close their eyes and listen. The court was not "pleased" but did not consider the event warranted removing the juror. *See State v. Cook,* 782 S.W.2d 762 (Mo.App.1989).

Next, appellant complains that the court erred in (1) sustaining the state's motion to remove Z.H. for cause and (2) denying the appellant's motion to remove juror No. 53 for cause.

▮ On *voir dire,* juror No. 53 indicated she was a victim of child molestation by her stepfather when she was ten years old. She was asked whether there was anything in that experience that would cause her to be less than fair. Her response was negative. Although defense counsel noted that her eyes were "watery," she repeatedly stated that her past experi-

ence would not in any way interfere with ability to listen and decide. She was questioned by the court. She told the court that she could be fair and impartial and would be able to judge the facts and apply the law. The court indicated there was no basis for striking her for cause.

■ As to Z.H., she indicated that while she could decide the case, it would be difficult, because of her religious scruples to assess punishment. She said, "I want no part of that." Although she equivocated as to whether she "couldn't" assess punishment or "didn't want to" assess punishment, the court concluded that she be excused because she equivocated and because there were other venirepersons to take her place.

In neither case was there an abuse of discretion or prejudicial error.

Principles applicable to jury selection are well-established. An accused must be provided a full panel of qualified venirepersons from which to make the statutory number of peremptory challenges, and the failure to grant a legitimate challenge is error. *State v. Engleman,* 634 S.W.2d 466, 471 (Mo.1982); *State v. Reynolds,* 619 S.W.2d 741, 749 (Mo.1981). In determining the qualifications of individual venirepersons, the trial court has broad discretion, and its ruling will remain undisturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Hopkins,* 687 S.W.2d 188, 189 (Mo. banc 1985); *State v. Reynolds, supra,* 619 S.W.2d at 749; *State v. Wynn,* 783 S.W.2d 447 (Mo.App.1990). Moreover, each challenge for cause to a venireperson must be judged on its facts. *State v. Stewart,* 692 S.W.2d 295, 298 (Mo. banc 1985). The trial court's decision with respect to such a challenge is made on the basis of the entire examination, not merely upon a single response. *State v. Murray,* 744 S.W.2d 762, 769 (Mo. banc 1988), *cert. den.,* — U.S. —, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Furthermore, that decision necessarily involves a judgment based upon observation of a prospective juror's demeanor and, considering that observation, an evaluation and interpretation of his or her responses as they relate to whether he or she would be fair and impartial if chosen to be a juror. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983); *State v. Schwer,* 757 S.W.2d 258, 262 (Mo.App.1988). Because the trial court can observe the demeanor and hear the responses of venirepersons, we resolve doubts as to its findings in its favor. *Id.* Accordingly, the law attaches a strong presumption that the jury tendered at the outset of the trial has been properly selected. *State v. Bynum,* 680 S.W.2d 156, 160 (Mo. banc 1984).

Despite her early childhood experience, juror No. 53 maintained she could be impartial and decide the case, while Z.H. stated equivocally that assessing punishment would be contrary to her religious scruples. The totality of her answers showed that she wanted "no part" of assessing punishment.

The trial court did not err.

Lastly, we consider the appellant's motion to vacate filed pursuant to Rule 29.15.

Appellant contends that the court not only erred in overruling his 29.15 motion based on ineffective assistance of counsel in failing to investigate, but also erred in overruling his motion to reopen the case because of the evidence of Randy Taliaferro that L. had told him she had not been raped. He contends that trial counsel in failing to present Taliaferro as a witness at trial, failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under the same or similar circumstances.

Our review under Rule 29.15 is a limited one. It is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j); *Mallett v. State,* 769 S.W.2d 77, 79 (Mo. banc 1989). The principles relating to ineffectiveness of counsel and the failure to present witnesses at trial have often been stated and need not be repeated here.

■ Trial defense counsel testified at the evidentiary hearing that she spoke to Taliaferro and others about the statement that L. said she had not been raped. Counsel stated that nobody else remembered

ever hearing the statement and that she decided against calling Taliaferro because some of the other things he said would be detrimental. The choice not to present Taliaferro was one of trial strategy. Counsel cannot be judged to be ineffective based on such ground. *Mahaney v. State*, 660 S.W.2d 774, 775 (Mo.App.1983). A decision not to call a witness is virtually unchallengeable. *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987).

Neither did the court err in denying appellant's motion to reopen the case. The court has broad discretion for such action. *State v. Guelker*, 548 S.W.2d 521, 526 (Mo. banc 1976). The court gave counsel time after the evidentiary hearing to present additional matters before March 1, 1989. The motion to reopen was filed thereafter. Regardless, the court had the information concerning Taliaferro's evidence and concluded that counsel was not ineffective in failing to present him as a witness at trial.

We have read the entire transcripts, the authorities relied upon by the appellant and conclude that (1) there was no prejudicial error in the trial of the cause, and (2) the trial court was not clearly erroneous in denying appellant's 29.15 motion.

The judgments are affirmed.

SIMON, C.J., and DOWD, P.J., concur.