**STATE of Missouri, Respondent,**

**v.**

**Frederick ZAHN, Appellant.**

**No. 57716.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 15, 1991.

James Martin, Kurt D. Schultz, John Malec, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant appeals his jury conviction for assault in the second degree, armed criminal action, and unlawful use of a weapon. We affirm.

Defendant does not challenge the sufficiency of the evidence. Defendant is Dr. Frederick Zahn, a licensed physician. On the night of November 29, 1988, he went to the apartment shared by the victim, Tracy Kustra, and Sherry Elliott. He arrived sometime between 10:30 and 11:00 p.m., and Ms. Elliott let him in. Ms. Elliott went into victim's bedroom to awaken her and inform her that defendant was there to see her. After a "period of time," defendant asked Ms. Elliott to check and see what

was taking victim so long. Ms. Elliott did so, returned, and continued to converse with defendant while he waited for victim.

Shortly thereafter, defendant indicated he needed to use the restroom. He cut through victim's bedroom to reach the bathroom. While in victim's bedroom he noticed a man was in bed with her. After using the restroom he returned to the living room, and waited on the couch further for victim to come out. When asked who was in bed with victim, Ms. Elliott informed defendant that it was Frank Krill. Defendant grew angry as time passed, so he instructed Ms. Elliott to check on victim and "[t]ell her I am leaving and she is either going with me or she is not." After checking on victim again, Ms. Elliott informed defendant that victim was up and getting dressed.

Defendant left the apartment and retrieved a firearm, a .357 magnum, from his car. He returned to the apartment with the gun in the belt of his trousers. As victim was still not out of her bedroom, he requested that Ms. Elliott check on her again. When the victim came out of her bedroom, defendant asked her if she was ready to go with him. She responded that she was not ready for anything. Defendant said finally that he was leaving. He went over to the television set, bent down and unplugged it and said: "I am taking the television set because I bought it." When victim attempted to stop him, defendant threw her to the ground, causing her to strike and knock the television and the table upon which it sat. During the course of the argument, Frank Krill came to the bedroom door. Upon seeing Mr. Krill, defendant pulled the gun, pointed it at Krill and said "Freeze".

Defendant then turned and pointed the gun at Ms. Elliott and told her to sit down. Then, he turned to victim and told her to go back into the bedroom with Mr. Krill. When victim refused to return to the bedroom, defendant, with the gun pointed downward and his eyes shut, fired the gun. The bullet struck victim in the left leg just below the knee.

Immediately after the shooting, defendant left the apartment saying: "She will be all right". He went outside and, after removing the bullets from his gun and throwing them into some nearby bushes, laid down on the front seat of his car. He waited there for the police to arrive.

After being read his rights, defendant told the police he had gone over to victim's apartment to discuss her drug problem when he found her in bed with another man. Defendant stated he retrieved the gun from his car and it accidentally fired when he was threatened by Mr. Krill and attacked by victim. He told the officer that he pulled the gun out, pointed it at the floor, and it went off. At the police station, after again being advised his rights, defendant indicated he wished to make a statement. Basically, defendant's statement was the same, that the gun fired accidentally when it was pointed at the floor while he was being attacked by victim and Frank Krill.

The jury found defendant guilty on Count I for assault in the second degree, on Count II for armed criminal action, and on Count III for unlawful use of a weapon. In accordance with the jury's assessment of punishment the court sentenced defendant to one day in jail on Count I, three years imprisonment on Count II and a fine of $3,000 on Count III.

Defendant asserts three points on appeal.

1. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT.

2. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO SUBMIT AN INSTRUCTION FOR ASSAULT IN THE THIRD DEGREE AS A LESSER INCLUDED OFFENSE OF ASSAULT IN THE SECOND DEGREE.

3. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO IMPEACH DEFENDANT ON A COLLATERAL ISSUE.

■ Each of these points is patently in violation of Rule 30.06(d) by reason of the

total absence of any attempt to state "wherein and why" the challenged rulings of the trial court are deemed to be erroneous. Points which cannot be comprehended without resort to the transcript or the argument portion of the brief preserve nothing for appellate review. *State v. Smith*, 770 S.W.2d 469, 472 (Mo.App.1989); *State v. Adams*, 741 S.W.2d 781, 785 (Mo. App.1987).

Nevertheless, we choose to exercise our discretion by addressing the unpreserved points in order to foreclose any subsequently asserted contention that defendant has been deprived of any fundamental rights.

■ By referring to the argument portion of defendant's brief, it appears that his first point refers to the prosecutor's statement during closing arguments that "the doctor did not use his [gun] in a reasonable manner, neither will he use it in a reasonable manner in the future." The court sustained defendant's objection to this argument. After the prosecutor had concluded her argument, defendant's attorney requested a mistrial because the prosecutor had commented on the possibility of future crimes by the defendant. The trial court noted that the objection had been sustained and concluded that no prejudice warranting a mistrial had occurred.

Assessment of the prejudicial effect of improper oral argument is a matter within the discretion of the trial court, and the appellate court will not interfere absent a clear abuse of that discretion. *State v. Whitman*, 788 S.W.2d 328, 335 (Mo.App. 1990). We find no such abuse here. The brief mention of possible future misconduct by defendant, improper though it may have been, cannot be viewed as having a decisive effect on the jury's deliberations when examined in the light of the strength of the State's evidence and the admissions of the defendant. Moreover, the immediate action of the trial court in sustaining the objection tends to dispel any possible prejudicial impact of the improper statement.

We also note that at the time of the unfortunate comment defendant obtained all the relief he requested. His motion for a mistrial, made only after the completion of the prosecutor's rebuttal argument, was untimely. *State v. Dunkins*, 787 S.W.2d 869, 871 (Mo.App.1990).

■ Defendant's second point alleges trial court error in refusing to give his requested instruction on assault in the third degree as a lesser included offense. The trial court is not required to charge the jury with respect to a lesser included offense unless there is a basis for acquitting the defendant of the offense charged and convicting him of the lesser included offense. § 556.046.2 RSMo.1986; *State v. Jackson*, 743 S.W.2d 493, 496 (Mo.App. 1987). Defendant argues that under the evidence the jury could have acquitted him of recklessly causing a serious physical injury and found him guilty of causing merely a physical injury. We disagree. Serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.-061(26) RSMo.1986.[1] The victim was shot in the leg by a projectile fired from a .357 magnum. The bullet entered the front of her leg just below the knee cap and exited just below the calf muscle on the back of the leg. The bullet passed through the tibia and severed the peroneal artery. The wound required debridement and developed signs of infection. The victim spent a week in the hospital and has permanent scars on her leg. That such an injury could create a substantial risk of death in the absence of prompt medical treatment is obvious. In *State v. Briggs*, 740 S.W.2d 399, 401 (Mo. App.1987), a cracked rib without displacement and which did not require hospitalization, was found to be "a protracted ... impairment of the function of the part of the body" within the statutory definition. The fact that the victim, who testified as a witness hostile to the State, did not complain of present pain or disability does not constitute evidence that the injury was not serious when inflicted. *State v. Johnson*, 770 S.W.2d 263, 266 (Mo.App.1989).

1. Due to a revision, this section now appears at § 556.061(28) (Cum.Supp.1990).

**22**

■ In defendant's final point on appeal, he apparently objects to the evidence developed during cross-examination of the defendant that he perjured himself during his dissolution case by denying under oath that he had ever had sexual intercourse with Tracy Kustra. The point is not preserved for appellate review because, in addition to the violations of Rules 30.06(d) and 30.06(h) [requiring page references to the transcript] the matter was not raised in defendant's motion for a new trial. Furthermore, it is within the trial court's discretion to permit cross-examination of a witness directed toward testing his or her credibility, however irrelevant such examination may be to the basic issues. *State v. Jackson,* 768 S.W.2d 614, 616 (Mo.App. 1989). It is not error to allow cross-examination regarding specific instances of unconvicted conduct if relevant to impeach the veracity of the defendant. *State v. Carothers,* 710 S.W.2d 370, 371 (Mo.App. 1986).

Judgment affirmed.

SMITH, P.J., and SATZ, J., concur.