STATE of Missouri, Plaintiff–
Respondent,

v.

Frank L. GARRISON, Defendant–
Appellant.

No. 19277.

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 1995.

Stephen P. Carlton, Carlton & Mayo, Carthage, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Frank Garrison guilty of trafficking drugs in the second degree, § 195.223,[1] and he was sentenced to 10 years' imprisonment. Defendant appeals.

■ Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise. In reviewing defendant's challenge to the sufficiency of the evidence, this court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405[1] (Mo. banc 1993). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

With exceptions not applicable here, § 195.223.9 reads, in pertinent part:

"A person commits the crime of trafficking drugs in the second degree if ... he possesses or has under his control, ... or brings into this state more than one hundred fifty grams of any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: ... methamphetamine...."

The statute further provides that if the quantity involved is 450 grams or more the person shall be guilty of a class A felony.

---

1. All references to statutes are to RSMo 1994, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

In order to prove possession of a controlled substance, the state must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. *State v. Fuente,* 871 S.W.2d 438, 442[3] (Mo.banc 1994); *State v. Mercado,* 887 S.W.2d 688, 690 (Mo.App.1994). Actual possession is not necessary to sustain a conviction. Constructive possession will suffice when other facts support an inference of defendant's knowledge of the presence of the controlled substance. *Mercado,* at 690–691. Both possession and knowledge may be proved by circumstantial evidence. *State v. Barber,* 635 S.W.2d 342, 343[3] (Mo.1982). If there is joint control over premises where drugs were found, further evidence is necessary to connect an accused with the drugs. *Id.* at 343–44[4]. If defendant has access to the area where drugs are found, that is a basis for finding constructive possession. *Mercado,* at 691[2]; *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977).

Among factors tending to show conscious and intentional possession of the controlled substance is the presence of a gun within easy reach of the defendant. *State v. Purlee,* 839 S.W.2d 584, 589[11] (Mo.banc 1992). The presence of two loaded pistols in the passenger compartment of a vehicle supports an inference that the gun owner may know he is transporting something of substantial monetary value. *State v. LaFlamme,* 869 S.W.2d 183, 186[4] (Mo.App. 1993). Other factors tending to show possession may include evidence of defendant's conduct and mannerisms, contradictory statements, and access to the area where the contraband was found. *State v. Merrill,* 846 S.W.2d 225, 229[9] (Mo.App.1993). A defendant's access to an area in which drugs are found is an incriminating fact which is not destroyed by the fact that another also had access to the area. *State v. Weide,* 812 S.W.2d 866, 869[5] (Mo.App.1991). The value of illegal drugs is also relevant to show knowing and intentional possession. *Id.*[7].

In addition to its formal portions, the information charged that on July 30, 1993, in Newton County, "the defendant possessed more than 450 grams of [a] material containing any quantity of methamphetamine, a controlled substance, knowing of its presence and illegal nature."

On July 30, 1993, Joplin police officers Pete Box, Bill Goodwin, and Delmar Haase were on duty, in separate vehicles, on Interstate 44 in Newton County. Box noticed a 1993 Cadillac, with California license plates, headed east on the interstate. The driver of the Cadillac was one Miller. Defendant was a passenger in the Cadillac, which he had rented.

Officer Box saw the Cadillac change from the outside lane to the inside lane without signalling. As it approached an exit, the Cadillac cut in front of two other cars and caused those vehicles to slam on their brakes as the Cadillac changed lanes again, from the inside lane to the outside lane, to take the exit.

Box was unable to follow the Cadillac because of traffic. Box radioed Officer Goodwin, who was nearby, and asked him to follow the Cadillac. Goodwin took the exit and followed the Cadillac. He saw the Cadillac pull onto the parking lot of a convenience store, turn around, and reenter I–44. The Cadillac did not stop while performing that maneuver. Goodwin and Box stopped the Cadillac and were soon joined by Officer Haase.

Box asked Miller why he had made such an abrupt exit off of the interstate. Miller did not answer, and "looked as if he were having some sort of panic attack." Defendant told Box that they left the interstate to get a bag of ice. Defendant was visibly nervous. Defendant showed Box the rental agreement for the Cadillac. He told Box that he had driven the car from California until he had gotten sleepy near Joplin where he let Miller drive.

Box suspected the two were carrying drugs. He asked defendant if there were any drugs or illegal weapons in the car, and defendant answered in the negative. Defendant gave the officers consent to search the vehicle for drugs or weapons, and defendant opened the trunk.

In the trunk Officer Box found a "carry bag" containing a loaded .38 caliber pistol.

Inside the carry bag was a "black waist bag" which contained $820 in cash and a loaded .22 caliber Derringer. Defendant told Box that the guns were his.

Officer Haase searched the front portion of the vehicle and found a beer cooler bag which contained a taped brown package. Miller and defendant were arrested.

After he had received the Miranda warnings, defendant gave a statement in which he said that he knew illegal drugs were in the bag in his car, he just didn't know what kind. Defendant said that Miller paid him $1,500 to drive Miller to Indiana and that he, defendant, was going to Indiana anyway. Referring to the contents of the beer cooler, defendant said, "I had no idea what was in there. I suspected it was illegal, because of the amount of money he was giving me to drive."

A post-arrest search of defendant showed that he had four .22 hollow point shells in his pocket of his shorts. Defendant's wallet contained a piece of paper with a "schedule of weights and dollar amounts." Officer Haase testified that he had considerable experience in sting operations and drug transactions and that the schedule was similar to what he had seen in drug transactions. He said that methamphetamine powder is measured in grams and fractions of grams.

State's witness Melvyn Mosher, a chemist, identified the contents of the brown package as material weighing 1,043.9 grams and containing methamphetamine. Earlier testimony revealed that the street value of the contraband was over $100,000.

In support of his first point, defendant argues:

"[A]lthough there was sufficient evidence to show the package containing the controlled substance was in defendant's vehicle there was insufficient evidence to support a conviction that the defendant knew the package contained methamphetamine. There were two occupants of defendant's vehicle, the package containing the controlled substance was sealed and was further placed inside the [cooler] bag, the substance has minimal odor, and the defendant stated he did not know the bag contained methamphetamine. At best the

state's evidence showed that defendant was aware his companion had a [cooler] bag and further may have had some suspicion as to its contents however there was no evidence presented to support a conviction requiring the state to prove beyond a reasonable doubt that the defendant knew of the presence of methamphetamine in the container."

Defendant's argument overlooks the fact that the jury was not required to believe defendant's statement that the cooler bag was the property of Miller.

■■■ Incriminating factors present here include the following: Defendant was not merely a passenger in the Cadillac, he was the lessee of it; the Cadillac made erratic and peculiar movements; defendant was visibly nervous; there were two loaded pistols, admittedly owned by defendant, in the black bag, which also contained $820 in cash; defendant admitted receiving $1,500 from Miller for driving Miller to Indiana; defendant suspected that the beer cooler contained contraband because of that payment; defendant had on his person hollow point shells which were ammunition for the Derringer; defendant's wallet contained a schedule of weights and dollar amounts often used in drug transactions; and the brown package contained a large amount, 1,043.9 grams, of material containing methamphetamine.

This court holds that the evidence is sufficient to support the verdict. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in receiving into evidence, over defendant's objection, the two pistols and the four .22 hollow point shells found in defendant's pocket, because those items "had no probative value, were not related to the offense charged, and were prejudicial to defendant."

■■■■ As the excellent brief of the state points out, if evidence is relevant, it will not be inadmissible simply because it may be prejudicial. *State v. Flenoid,* 838 S.W.2d 462, 468[7] (Mo.App.1992). "[R]elevance, not prejudice, is the touchstone of due process...." *State v. Trimble,* 638 S.W.2d 726, 732 (Mo.banc 1982). The trial court has

broad discretion in determining the relevancy of evidence. *State v. Preston*, 673 S.W.2d 1, 6 (Mo.banc 1984). Evidence is relevant if it logically tends to prove a fact in issue or corroborates relevant evidence which bears on the principal issue. *State v. Mercer*, 618 S.W.2d 1, 9[10] (Mo.banc 1981). The guns and shells were relevant to the issue of defendant's knowledge and intent. This court holds that the trial court did not abuse its discretion in receiving the challenged evidence. *State v. Lockheart*, 757 S.W.2d 221, 223[2] (Mo.App.1988). Defendant's second point has no merit.

Defendant's third point is that the trial court erred "in allowing the state to endorse witness Melvyn Mosher, state chemist, on the grounds that it was prejudicial to defendant. Rule 23.01."

During voir dire, the trial court, at the request of the prosecuting attorney, permitted the state to endorse on the information the name of Melvyn Mosher, chemist, as an additional witness. Defendant's third point refers to that incident. As written, the point preserves nothing for appellate review. "Additional witnesses may be listed at any time after notice to the defendant upon order of the court." Rule 23.01(f). The point does not state why the challenged ruling of the court was erroneous. A statement that it was prejudicial to defendant is a mere conclusion. "Points which cannot be comprehended without resort to the transcript or the argument portion of the brief preserve nothing for appellate review." *State v. Zahn*, 823 S.W.2d 18, 21[1] (Mo.App.1991).

A gratuitous review of the transcript discloses no error. During voir dire the prosecutor asked the court for permission to endorse Melvyn Mosher. Referring to Mosher, the prosecutor said, "He is the lab technician which is part of the discovery.... I don't think it comes as a surprise in that discovery has been furnished with his name in discovery." Apparently referring to defense counsel,[2] the prosecutor said, "He is aware that Melvyn Mosher would be testifying." Defense counsel made no response to the fore-

going statements. All counsel said was, "I object to Melvyn Mosher being endorsed."

Although this court does not approve of the state's failure to list the witness until voir dire, the record does not show that the trial court erred in permitting the endorsement.

The judgment is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.

---

2. Present counsel for defendant did not represent     him in the trial court.